Hillsborough-southern judicial district
No. 2003-032

THE STATE OF NEW HAMPSHIRE

v.

EARLE K. FOX, III

Argued: January 7, 2004
Opinion Issued: March 4, 2004

*Peter W. Heed,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Earle K. Fox, III, was convicted after a jury trial in Superior Court (*Hampsey,* J.) on four counts of being a felon in possession of a firearm. *See* RSA 159:3, I (1994) (amended 2001). On appeal, the defendant argues that: (1) the trial court erred in refusing to order the State to provide him with ownership records of the firearms; and (2) the State presented insufficient evidence to support his conviction for possessing an antique .22 caliber revolver. We affirm.

The record supports the following facts. On December 30, 1999, the Pelham police called the defendant's father, Earle K. Fox, II (Fox), to inform him that they were going to arrest the defendant on an unrelated charge. Fox told the police that he believed the defendant may have several firearms in his trailer, including a sawed-off shotgun, a .45 caliber pistol, and an SKS rifle, since he had previously seen the defendant handling each of the firearms.

The police went to the trailer and arrested the defendant pursuant to the arrest warrant. The police later executed a search warrant for the

firearms in the trailer. During the search, the police found a loaded sawed-off shotgun in a utility closet, a loaded .45 caliber pistol with an ammunition clip behind books on a bookshelf, a loaded antique .22 caliber revolver in a holster at the head of the defendant's bed, and a loaded SKS rifle with extra ammunition under the planking of the defendant's bed. Subsequently, because the defendant had a prior felony conviction, he was indicted for being a felon in possession.

The defendant first argues that the trial court erred when it denied the defendant's motions for discovery of records regarding the ownership of the four firearms. Prior to trial, the defendant asked the court to order the State to obtain certain records from Fox, arguing that the records would indicate that Fox, not the defendant, owned the firearms. The prosecution argued that the motions were "overbroad, untimely, and a fishing expedition." The court denied the motions, noting that the defendant had never asked Fox for the information.

The defendant argues that in denying his motions, the court violated his right to produce all favorable proofs under Part I, Article 15 of the New Hampshire Constitution and to due process under the Fifth Amendment of the U.S. Constitution.

We review the trial court's pretrial discovery ruling for an unsustainable exercise of discretion. *See State v. Spaulding*, 147 N.H. 583, 589 (2002); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining the unsustainable exercise of discretion standard). We will affirm the trial court's decision unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case, *Lambert*, 147 N.H. at 296, and that any error was prejudicial to his substantive rights, *State v. Ellsworth*, 136 N.H. 115, 117 (1992). The State argues that the trial court's refusal to order Fox to turn over the records for the firearms was harmless error. Assuming without deciding that the trial court's ruling was error, we agree with the State that any error was harmless.

The State bears the burden of proving that an error was harmless. *State v. Goodale*, 144 N.H. 224, 232 (1999). Error is not harmless unless the State proves beyond a reasonable doubt that the error did not affect the verdict. *Id.* In deciding whether the State has met its burden, we consider the strength of the State's evidence presented at trial, as well as the character of the excluded evidence, including whether the evidence was inconsequential in relation to the State's evidence. *Id.* If the excluded evidence is merely cumulative, we may conclude beyond a reasonable doubt that it would not have affected the jury's verdict. *State v. Enderson*, 148 N.H. 252, 255 (2002).

As a threshold matter, we note that the State did not have to prove the defendant owned the firearms. Instead, the State could prove that the defendant had the firearms "in his possession" or "under his control." RSA 159:3, I(a). Generally, a person is in control of a firearm if the person has the ability to determine who may have the ultimate use of that firearm. *See State v. Haycock*, 136 N.H. 361, 363 (1992). Here, the evidence was overwhelming that the defendant controlled the firearms.

First, the defendant had control over the trailer in which the police discovered the firearms. In the 1990s, the defendant and his family bought the trailer, which they put on his parents' property for the defendant's exclusive use. Though Fox testified that he owned the trailer, had a key to it, and paid all bills for it, only the defendant used it. Since 1995, the defendant used the trailer daily, but stayed overnight in it only two or three times a month, normally sleeping in Massachusetts. The defendant remodeled the trailer, cleaned it, and owned all the furniture in it. When the police came to arrest the defendant, they observed the defendant moving between his car, his parents' house, and the trailer. Fox operated a gun shop in the basement of his home from the 1960s until 1997, but testified that he never stored any guns in the trailer. In sum, the defendant effectively controlled the trailer and the items in the trailer. *See State v. Pike*, 128 N.H. 447, 450 (1986) (finding the defendant was in control of weapons in an apartment in which he lived part-time with his girlfriend).

In addition, the defendant exercised control over each of the firearms. The police found the loaded sawed-off shotgun with extra ammunition in a utility closet in the defendant's trailer. Fox testified that the defendant had sawed off the barrel, and displayed it to him about one month before the defendant's arrest. The police discovered the loaded .45 caliber pistol with an ammunition clip behind books on a bookshelf. The defendant's brother testified that the defendant had shown him the .45 caliber pistol in the late fall of 1999, and Fox testified that he had seen the defendant with the gun three or four times. The police found the antique .22 caliber revolver, loaded and with extra ammunition, hanging on the railing at the head of the defendant's bed. Fox testified that he had received the .22 caliber revolver in unfireable condition, and stored it in his cellar. When the police discovered the revolver on the railing, it was loaded, and had been "cleaned up" to such a degree that Fox failed to recognize it. The police found the loaded SKS rifle with extra ammunition under the planks at the

bottom of the defendant's bed. Fox testified that he had seen the defendant use the rifle on several occasions prior to his arrest.

 Because the overwhelming evidence shows that the defendant knowingly controlled each of the firearms, any evidence that Fox owned the firearms would have been inconsequential and would not have affected the verdict. We thus hold that any error the trial court may have made in not ordering the State to obtain ownership records was harmless.

Finally, we need only briefly address the defendant's argument that the State failed to present sufficient evidence that he controlled or possessed the antique .22 caliber revolver. In light of our holding above that the overwhelming evidence shows that the defendant controlled all four firearms, it necessarily follows that the evidence was sufficient to sustain his conviction for controlling the antique .22 caliber revolver.

*Affirmed.*

BRODERICK, C.J., and NADEAU and DALIANIS, JJ., concurred.