913 A.2d 767 (2006)
The STATE of New Hampshire,
v.
John CRIE.
No. 2005-568.
Supreme Court of New Hampshire.
Submitted: July 21, 2006.
Opinion Issued: November 28, 2006.
As Modified on Denial of Reconsideration January 11, 2007.
*770 Kelly A. Ayotte, attorney general (Nicholas Cort, assistant attorney general, on the brief), for the State.
Penny S. Dean, of Concord, on the brief, for the defendant.
DUGGAN, J.
The defendant, John Crie, appeals his conviction on four counts of being a felon in possession of a dangerous weapon, see RSA 159:3 (2002), following a jury trial in Superior Court (Coffey, J.). We affirm.
The following facts appear in the record. On January 2, 2004, a state trooper went to the residence occupied by the defendant and his wife, Joyce Crie, on an unrelated matter. In response to an inquiry, the defendant informed the trooper that three rifles were stored in a gun locker inside the residence. The trooper then learned that the defendant had been convicted of negligent homicide, a felony, in 1988. The police obtained a search warrant and found four firearms, along with knives, checkbooks, photographs and other personal items, in the locker.
The defendant was indicted on four counts of being a felon in possession of a firearm. See RSA 159:3. Each indictment was captioned "Felon in Possession of a Dangerous Weapon," and listed as the elements of each offense that the defendant knowingly possessed a specific firearm and that he had been previously convicted of a felony against another.
At trial, the defendant's wife testified that she and the defendant owned the firearms together and both had control over them. The gun locker could not be opened without a key and the combination to the lock. The defendant knew the combination and was able to gain access to the firearms.
*771 The jury convicted the defendant on all four counts. At the sentencing hearing on June 15, 2005, the court applied the mandatory minimum sentencing provision of RSA 651:2, II-g (Supp. 2006) and sentenced the defendant to four concurrent sentences of three to six years imprisonment.
On appeal, the defendant argues: (1) the trial court's jury instructions were erroneous; (2) the evidence was insufficient to prove that he had possession of the firearms; (3) the trial court erred under RSA 651:2, II-g because his prior conviction for negligent homicide did not involve the possession, use or attempted use of a deadly weapon; (4) the mandatory minimum sentencing provisions of RSA 651:2, II-g are not applicable to his felon in possession convictions; and (5) the trial court's application of RSA 651:2, II-g denied him due process.
We first address the defendant's assertion that the jury instructions were erroneous. The defendant presents two arguments. First, he argues that the trial court erred by informing the jury that he had been "charged with four counts of being a felon in possession of a firearm or dangerous weapon" because the indictments do not contain the word "firearm." The defendant did not object on this basis at trial, and we therefore decline to address this claim. See State v. McCabe, 145 N.H. 686, 689-90, 765 A.2d 176 (2001). We also reject the defendant's invitation to hold that the trial court's use of the word `firearm' constitutes plain error. See Sup.Ct. R. 16-A.
Second, the defendant argues the court erred by omitting certain language that he requested be added to the instruction on the definition of possession. The court instructed the jury as follows:
It is not a crime for a convicted felon to be in the presence of weapons, either knowingly or otherwise. It is a crime only when he has control over the firearm. So the question raised is whether the defendant is among the persons who may have [occupied] the residence or the structure in which the firearms were found and could determine who could use that particular rifle or rifles? The question then is has the State shown beyond a reasonable doubt that the defendant had the power over the use of the weapon? Possession means when a person has an item in his custody and exercises dominion or control over it.
The defendant requested that the court add the following: "When we say that the State has to prove beyond a reasonable doubt that the Defendant has the ability to exercise control over the firearm, we mean that in the sense that he can determine who may have the ultimate use of the firearm." The defendant claims that the omission of this language was error. See State v. Pike, 128 N.H. 447, 449-50, 514 A.2d 1279 (1986). The defendant's argument appears to be a challenge solely to the portion of the instruction defining "control." See State v. Fox, 150 N.H. 623, 625, 843 A.2d 309 (2004).
We will uphold the trial court's jury instructions as long as they adequately state the law that applies to the case. State v. Taylor, 121 N.H. 489, 495-96, 431 A.2d 775 (1981). The defendant is not entitled to have the court use the exact words of requested instructions. Weldy v. Town of Kingston, 128 N.H. 325, 333, 514 A.2d 1257 (1986). In the present case, the court's charge to the jury adequately stated the applicable law defining control. See State v. Smalley, 148 N.H. 66, 68, 802 A.2d 1154 (2002).
We next address the defendant's argument that the evidence was insufficient *772 to support the jury's finding of possession of the firearms under RSA 159:3. To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. See State v. Schonarth, 152 N.H. 560, 563, 883 A.2d 305 (2005). In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. See id. Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt. State v. Stauff, 126 N.H. 186, 189, 489 A.2d 140 (1985). Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. See id.
Under RSA 159:3, I, "[a] person is guilty of a class B felony if he . . . [o]wns or has in his possession or under his control, a . . . deadly weapon. . . ." In this case, the indictments alleged that the defendant had the firearms in his possession. To prove possession the State had to prove that the defendant "had custody of the [firearm] and exercised dominion and control over it." Smalley, 148 N.H. at 68, 832 A.2d 1154.
In the present case there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant possessed the four firearms found in his home. The trooper testified that the defendant told him at the scene that there were three rifles in a gun locker inside the house. The defendant's wife testified that she and the defendant both owned the weapons and both exercised control over them. She also testified that the defendant could access the gun locker if needed. Based upon this evidence, the jury could reasonably have concluded that the firearms were in the defendant's custody, that he exercised dominion and control over them and, therefore, that he possessed them. See Stauff, 126 N.H. at 189-90, 489 A.2d 140 (sufficient evidence of possession where firearms were found on the side of the road along the route of a car chase involving the defendant and ammunition matching one of the guns was found in defendant's vehicle).
The defendant argues that he did not have possession because the key to the locker was in his wife's jewelry box. This, however, did not prevent the defendant from gaining access to the weapons as the jewelry box and gun locker were both in the home the defendant shared with his wife. Based upon the wife's testimony that the defendant could get into the locker if necessary, the jury could reasonably have concluded that in addition to knowing the combination to the locker, the defendant also knew the location of the key and could retrieve it from the jewelry box at any time. Moreover, the defendant did not have to be in exclusive possession of the firearms for a jury to find that he possessed them. See id. at 189, 489 A.2d 140 (stating that possession need not be exclusive; constructive possession, whereby a defendant participates with another, is sufficient).
We next address the defendant's argument that the three-year minimum mandatory sentencing provision of RSA 651:2, II-g is inapplicable because his underlying felony of negligent homicide did not encompass the element of possession, use or attempted use of a deadly weapon.
In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. State v. Yates, 152 N.H. 245, 255, 876 A.2d 176 (2005). We review the trial court's interpretation *773 of a statute de novo. Petition of State of N.H. (State v. Campbell), 152 N.H. 515, 520, 880 A.2d 397 (2005). When the language of a statute is clear on its face, its meaning is not subject to modification. State v. Hofland, 151 N.H. 322, 324, 857 A.2d 1271 (2004).
RSA 651:2, II-g provides:
If a person is convicted of a felony, an element of which is the possession, use or attempted use of a deadly weapon, and the deadly weapon is a firearm, such person may be sentenced to a maximum term of 20 years' imprisonment in lieu of any other sentence prescribed for the crime. The person shall be given a minimum mandatory sentence of not less than 3 years' imprisonment for a first offense and a minimum mandatory sentence of not less than 6 years' imprisonment if such person has been previously convicted of any state or federal offense for which the maximum penalty provided was imprisonment in excess of one year, and an element of which was the possession, use or attempted use of a firearm. Neither the whole nor any part of the minimum sentence imposed under this paragraph shall be suspended or reduced.
RSA 651:2, II-g is clear and unambiguous. It contains two separate mandatory minimum sentencing provisions. The first provision, applicable to this case, provides that a person "convicted of a felony, an element of which is the possession . . . of a deadly weapon, and the deadly weapon is a firearm, . . . shall be given a minimum mandatory sentence of not less than 3 years' imprisonment for a first offense. . . ." Thus, under the three-year provision of RSA 651:2, II-g, the nature of the defendant's prior felony conviction is immaterial.
The defendant argues that the three-year minimum sentence provision does not apply to him because his underlying felony of negligent homicide did not encompass the element of possession, use or attempted use of a deadly weapon. However, the requirement of possession, use or attempted use of a deadly weapon as an element applies only to the defendant's current conviction, that is, his conviction for being a felon in possession of a dangerous weapon. As just stated, under the three-year provision, the nature (indeed, the very existence) of the defendant's prior felony conviction of negligent homicide is immaterial because it is only relevant with respect to the six-year provision.
The defendant next asserts that the mandatory minimum sentence provision of RSA 651:2, II-g does not apply to his conviction of being a felon in possession. The defendant presents two interrelated arguments in support of his assertion. First, he argues that the legislature did not intend for the minimum sentencing provision to apply, in any instance, to convictions of felon in possession. This argument is based upon the legislative history of RSA 159:3.
When the language of a statute is plain and unambiguous, we need not look beyond the statute for further indications of legislative intent. Appeal of Booker, 139 N.H. 337, 341, 653 A.2d 1084 (1995). We will neither consider what the legislature might have said nor add words that it did not see fit to include. Hofland, 151 N.H. at 324, 857 A.2d 1271. We find the language of RSA 651:2, II-g to be plain and unambiguous.
The plain language of RSA 651:2, II-g provides a three-year minimum sentence if three conditions are met: (1) the defendant is convicted of a felony; (2) one of the elements of the crime is possession, use or attempted use of a deadly weapon; and (3) the deadly weapon is a firearm.
*774 Violation of RSA 159:3 is a felony. One of the elements of the crime is that the defendant "[o]wns or has in his possession or under his control, a . . . firearm . . . other deadly weapon. . . ." RSA 159:3, I(a). Certainly there are cases in which a defendant is convicted under RSA 159:3 and sentencing under RSA 651:2, II-g is not applicable. See State v. Taylor, 152 N.H. 719, 721, 886 A.2d 1012 (2005) (vacating the sentence because defendant was found to have firearms under his control under RSA 159:3 but not in his possession as required by RSA 651:2, II-g). However, unlike Taylor, the indictments in this case alleged that the weapons were in the defendant's "possession"; they did not allege, in the alternative, that the weapons were under his "control." Where, as here, the indictment specifically alleged that the defendant had firearms in his possession, the offense as alleged under RSA 159:3 is within the scope of RSA 651:2, II-g. Because we find the language of RSA 651:2, II-g to be plain and unambiguous, we need not look further for indications of the legislature's intent. See Booker, 139 N.H. at 341, 653 A.2d 1084.
The second part of the defendant's argument is that RSA 651:2, II-g refers to possession of a deadly weapon, but the captions of the indictments alleged that the defendant was a "Felon in Possession of a Dangerous Weapon." The defendant contends that because the captions on the indictments read "dangerous" rather than "deadly" weapon, "[he] has not been convicted of possession of a deadly weapon" and, thus, RSA 651:2, II-g is not applicable.
The caption is not part of the indictment. State v. Gary, 36 N.H. 359, 360 (1858). Thus, the fact that the term "dangerous weapon" was used in the caption of the indictments is not dispositive. Moreover, the mandatory minimum sentencing provision requires that possession, use or attempted use of a deadly weapon be an element of the felony conviction. In this case, possession of a deadly weapon was in fact an element of the defendant's conviction.
Any remaining ambiguity caused by this reference to dangerous weapons is clarified by the elements listed in the indictments. The indictments list the elements of the offense as: (1) John Crie knowingly; (2) had in his possession; (3) a Mossberg 12 gauge pistol grip shotgun, a Winchester 12 gauge shotgun, a Browning 20 gauge shotgun, and a Winchester 22 gauge shotgun; (4) having been previously convicted of Negligent Homicide, a felony against another. We thus conclude that the reference in the caption to a "Dangerous Weapon" was not error.
The final issue is raised in the defendant's brief as follows:
Did the trial court err in its application of R.S.A. 651:2, II-g in sentencing Crie, therefore denying Crie due process as applied to Crie's sentence, when the defense counsel's research shows that very few if any other defendants charged and sentenced pursuant to R.S.A. 159:3 since 1990 have been sentenced to the supposed mandatory minimum 3-6 years of R.S.A. 651:2, II-g?
In support of this argument, the defendant points to certain legislative history and contends that the legislature did not intend for RSA 651:2, II-g to apply to convictions of felon in possession. We have already held above that RSA 651:2, II-g is plain and unambiguous. Therefore, we will not examine its legislative history. See Booker, 139 N.H. at 341, 653 A.2d 1084.
The defendant also points to certain research or documents which, according to him, demonstrate that trial courts have differing interpretations of the relationship *775 between RSA 159:3 and RSA 651:2, II-g. Many of the documents relied upon by the defendants are mittimus orders from other criminal cases, which set forth the sentences given to defendants who were found to have violated RSA 159:3.
These documents can be divided into two sets. The first set pertains to sentences meted out after the date upon which the defendant was sentenced, while the second set pertains to sentences meted out before that date. With respect to the first set, those documents are not properly before us on appeal because: (1) they were not presented to the trial court; and (2) we rejected the defendant's effort to bring these documents before us when we denied his motion to enlarge the record. To the extent the second set of documents was appended to the defendant's sentencing memorandum filed in superior court, however, they are properly before us on appeal.
Although the defendant does not clearly challenge the constitutionality of RSA 651:2, II-g, he does argue, based upon the second set of documents, that his sentence under RSA 651:2, II-g is different from sentences given to other defendants who violated RSA 159:3, and that this difference automatically means that he has suffered some form of discrimination which would give rise to a due process or equal protection claim. We disagree.
In most instances, the documents upon which the defendant relies do not indicate the nature of the offense that led to the sentence. Where the documents do indicate the offense, it often is not clear that the offense involved a firearm. Not all offenses under RSA 159:3 involve a firearm. See RSA 159:3, I(a). In the absence of evidence of an offense involving a firearm, we are unable to ascertain how these documents would have any bearing upon application of RSA 651:2, II-g.
To the extent the defendant has offered evidence of sentences involving offenses committed with a firearm, it does not change the outcome of this appeal. In the present case, the defendant was properly sentenced by a trial court that correctly applied the statutory scheme as we have construed it. While it is possible that other defendants may have been sentenced inconsistently with our interpretation of the statutory scheme as set forth in this opinion, that circumstance alone does not automatically mean that the defendant is entitled to a sentence inconsistent with the statute's plain meaning. Cf. State Employees' Assoc. v. State, 127 N.H. 565, 569, 503 A.2d 829 (1986) (where a statute's plain meaning is clear, a party is not entitled to have his case adjudicated based upon an agency's consistent, but erroneous, interpretation of statute). Furthermore, the defendant does not challenge the constitutionality of the statute itself, and he has not satisfactorily explainednor do we discernhow either the Due Process Clause or the Equal Protection Clause creates a right to a sentence inconsistent with the plain meaning of the statute under the facts of this case. Bragg v. Director, N.H. Div. of Motor Vehicles, 141 N.H. 677, 678-79, 690 A.2d 571 (1997) (setting forth state due process analysis); WMUR Channel Nine v. N.H. Dep't of Fish and Game, 154 N.H. ___, ___, 908 A.2d 146, 149-50 (2006) (discussing federal due process analysis); In re Sandra H., 150 N.H. 634, 637-38, 846 A.2d 513 (2004) (discussing state and federal equal protection analysis).
The defendant raises several other arguments in passing; however, these arguments are not adequately briefed and, therefore, will not be addressed. See Appeal *776 of AlphaDirections, 152 N.H. 477, 483-84, 880 A.2d 380 (2005).
Affirmed.
BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.