Hillsborough-northern judicial district
No. 2010-202

THE STATE OF NEW HAMPSHIRE

v.

ROBERT BURKE

Argued: April 21, 2011
Opinion Issued: September 22, 2011

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Robert Burke, appeals a decision by the Trial Court (*Garfunkel*, J.) denying his motion to dismiss the charge of criminal restraint. *See* RSA 633:2 (2007). We affirm.

The record reveals the following facts. On the morning of February 2, 2009, eighty-three-year-old Monna Greenstreet was home alone when she saw the defendant standing in the area between her kitchen and family room. He was holding a knife and demanded $75,000, which he claimed her

husband had hidden in the house. Greenstreet told the defendant that her husband kept his money in the bank and not in the house.

The defendant gestured with the knife for Greenstreet to go down the hall to another room where she sat down on a sofa. Greenstreet was disabled and had difficulty walking. She had difficulty getting up from a seated position and had been taught to "lean forward two or three times and push herself up." After Greenstreet was seated on the sofa, the defendant then tied her hands together with "sturdy plastic-coated" wire. While Greenstreet later testified that the wire was not tied very tight, she told the defendant that the wire was too tight so that he would loosen the ties, which he did. After approximately thirty minutes, the defendant took all of the handsets from the Greenstreets' phones, took a laptop, and drove off in the Greenstreets' car. Greenstreet got up from the sofa, watched the defendant leave the house, and then went to her neighbor's home and called the police.

Greenstreet testified that the knife was a kitchen knife with a blade about three inches wide and twelve inches long. She testified that the defendant held the knife in a threatening manner, but never verbally threatened to use it or attempted to use it to harm her. She testified that she "was a little shaken up," but she "wasn't too scared [because] he didn't seem to be a man but just a big boy."

The defendant was subsequently charged with burglary, robbery, theft by unauthorized taking, criminal restraint, and obstructing the report of a crime. At the close of the State's case, the defendant moved to dismiss all of the charges. With respect to the criminal restraint charge, he argued that the State had failed to prove that Greenstreet was exposed to "risk of serious bodily injury."

The trial court denied the defendant's motion, ruling that "under the totality of the evidence . . . a reasonable jury could find that [Greenstreet] was exposed to risk of serious bodily injury when her hands were tied together." The jury subsequently convicted the defendant on several charges. He appeals only his conviction for criminal restraint.

On appeal, the defendant argues that the State did not prove that the circumstances of Greenstreet's confinement exposed her to a risk of serious bodily injury. The State contends that Greenstreet's physical limitations made it difficult for her to get up from a seated position without the use of her hands, and that by binding her hands together with plastic ties while she was seated, the defendant exposed her to a risk of serious bodily injury.

To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Crie*, 154 N.H. 403, 406 (2006). In

reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. *Id.* Circumstantial evidence may be sufficient to support a finding of guilt beyond a reasonable doubt. *Id.* Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. *Id.*

Resolution of this issue requires us to engage in statutory interpretation. "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Thiel*, 160 N.H. 462, 465 (2010) (quotation omitted). "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice." *State v. Kousounadis*, 159 N.H. 413, 423 (2009); *see* RSA 625:3 (2007). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Kousounadis*, 159 N.H. at 423. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Petition of State of N.H. (State v. Milner)*, 159 N.H. 456, 457 (2009). "We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words." *Id.* "Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation." *Kousounadis*, 159 N.H. at 423.

RSA 633:2, I, provides that a person is guilty of criminal restraint, a class B felony, "if he knowingly confines another unlawfully in circumstances exposing him to risk of serious bodily injury." The State is thus required to prove three elements: "(1) the actor must act knowingly; (2) the victim must be exposed to the risk of serious bodily injury; and (3) the act must confine the victim unlawfully." *State v. Bruce*, 132 N.H. 465, 470 (1989). A person is guilty of false imprisonment, a misdemeanor, "if he knowingly confines another unlawfully . . . so as to interfere substantially with his physical movement." RSA 633:3 (2007).

The only issue on appeal is whether the State proved that the victim was exposed to a "risk of serious bodily injury." "Serious bodily injury" is defined as "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA 625:11, VI (2007). The parties dispute the meaning of the word "risk." The defendant contends that to establish a "risk of serious bodily injury," the State must present evidence of "an actual, identifiable risk of serious physical or mental injury." To require less, the defendant argues, would render the element meaningless, resulting in no distinction between felony criminal restraint and misdemeanor false imprisonment.

The State responds by arguing that the plain meaning of the statute requires the State to prove only that the defendant exposed a victim to "the possibility of severe, permanent, or protracted loss of or impairment to the health or function of any part of the body."

■ "[W]e will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Milner*, 159 N.H. at 457. Had the legislature intended to require proof of an actual, identifiable risk, it certainly could have done so. *See Ark. Code Ann.* § 5-11-103 (2006) (statute requires proof that defendant exposed the victim to a *"substantial risk of serious physical injury"* (emphasis added)); *Conn. Gen. Stat. Ann.* § 53a-95 (West 2007) (same); *Mo. Rev. Stat.* § 565.120 (2000) (same); *Tenn. Code Ann.* § 39-13-303 (2010) (same); *Tex. Penal Code Ann.* § 20.02(c)(2)(A) (West 2011) (same).

We note the defendant's concern that a definition of risk that is too broad may blur the line between criminal restraint and false imprisonment. However the crime of criminal restraint still requires the State to prove the additional element of exposure to a risk of serious bodily injury. We are confident that juries are fully capable of determining whether or not the State has proved this risk of serious bodily injury and see no reason to rewrite the statute to require a higher quantum of proof.

At oral argument the State properly conceded that the fact that the defendant possessed a knife during Greenstreet's confinement does not affect the analysis because the defendant never verbally threatened to use the knife, never held it in close proximity to Greenstreet, and never attempted to harm her with it. Thus, on these facts, the knife is irrelevant to the element at issue.

■ In the instant case, the jury heard evidence that Greenstreet was disabled and had difficulty walking. There was testimony that her husband had to install a special bar in order to assist her going up and down stairs. Greenstreet had great difficulty getting up from a seated position and needed to lean forward two or three times and push herself up with her hands. Viewing the evidence in the light most favorable to the State, the evidence was sufficient to show that the defendant bound the hands of an elderly disabled woman who needed her hands in order to get up from a seated position. It was certainly foreseeable that Greenstreet would eventually attempt to get up from the sofa, and considering her physical impairments and the fact that her hands were bound, it was entirely possible that Greenstreet would lose her balance and suffer a serious bodily

injury. Although we consider this a close case, viewing the evidence in the light most favorable to the State, we hold that it was sufficient to establish a risk of serious bodily injury.

*Affirmed.*

DALIANIS, C.J., and HICKS, J., concurred; CONBOY, J., dissented.

CONBOY, J., dissenting. Because I would find the evidence presented by the State insufficient to establish risk of serious bodily injury, I respectfully dissent.

A person is guilty of criminal restraint if he "knowingly confines another unlawfully in circumstances exposing him to risk of serious bodily injury." RSA 633:2, I (2007). In dispute is the meaning of the word "risk," which is not defined by statute. The State urges us to adopt the dictionary definition of "risk," which is "the possibility of loss, injury, disadvantage, or destruction." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1961 (unabridged ed. 2002). But even accepting the State's position, the issue centers on the degree of "possibility" necessary to constitute "risk of serious bodily injury." In the State's view, presumably any possibility, however remote, would constitute such a risk.

The State argues that because Greenstreet was elderly and had difficulty standing up from a seated position without the use of her hands, the defendant's action in binding her hands while she was seated created a risk that, if Greenstreet tried to stand up with her hands bound, she might suffer severe injury or protracted bodily impairment. To read the criminal restraint statute so broadly, however, effectively eliminates the distinction between felony criminal restraint and misdemeanor false imprisonment. To the extent that any possibility of serious bodily injury, however remote, is sufficient to establish the required risk, then any conduct constituting misdemeanor false imprisonment arguably could be elevated to felony criminal restraint by simply positing a scenario under which the victim *might* have suffered serious bodily injury as a result of the unlawful confinement.

Here, the State apparently relies upon an attenuated string of possibilities. First, after her hands were bound, Greenstreet might have attempted to stand up from her seated position. Then, she might have had difficulty standing up due to her inability to use her hands. The difficulty she had standing up might have then caused her to fall in a manner that might have caused injury. Finally, the resulting injury might have constituted "serious bodily injury" as defined by statute — that is, "severe, permanent or protracted loss of or impairment to the health or of the function of any part of the body." RSA 625:11, VI (2007). Given this string of possibilities, it is

perhaps telling that the State did not articulate, either in its brief or when pressed at oral argument, precisely how the risk of serious bodily injury was created by the defendant's conduct. Because, in my view, the jury necessarily engaged in speculation in reaching its verdict, I would reverse the conviction for felony criminal restraint.