NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2012-078


THE STATE OF NEW HAMPSHIRE

v.

TARIQ ZUBHUZA

Argued:  November 7, 2013
Opinion Issued:  March 7, 2014


Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

David M. Rothstein, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


LYNN, J.  Following a jury trial in Superior Court (Nicolosi, J.), the defendant, Tariq Zubhuza, was convicted on charges of criminal restraint (RSA 633:2, I (2007)), burglary (RSA 635:1, I (2007)), and criminal threatening with a firearm (RSA 631:4, II(a)(2) (2007)), all stemming from his involvement in a home invasion.  On appeal, he argues that the trial court erred in denying his motion to dismiss the criminal restraint and burglary charges for insufficiency of the evidence.  We affirm.

I

Viewed in the light most favorable to the State, see, e.g., State v. Sideris, 157 N.H. 258, 263 (2008), the evidence presented at trial was sufficient for the jury to find the following facts. On December 3, 2010, Miranda Robbins lived in a Nashua apartment with her five young children and her fiancé, Dorian Montero. Montero's brother, D.J., also stayed at the apartment from time to time. At the time of the events described below, neither Montero nor D.J. was present, but, Robbins's father, Raymond Sinclair, was visiting.

At approximately 11:30 a.m. on that day, the defendant and Crystol Pelletier went to the apartment. When Robbins answered the door, Pelletier, the only person visible, identified herself as "Crystol" and asked whether D.J. was home. Robbins responded that D.J. was at work. Pelletier explained that D.J. owed her money "for prostitution" and, after pausing, looked to her left. At that point, the defendant appeared and "barged" past Robbins into the apartment. Once inside, the defendant began "looking around" the apartment, searching the bathroom and kitchenette while Robbins, who was in the dining room, asked what he was doing. At some point, Sinclair came from the living room into the dining room, at which time the defendant produced a gun and placed it to Sinclair's head. According to Robbins, the defendant, while holding the gun to Sinclair's head, told him, "if you move or say anything . . . I'll blow your head away." Eventually, one of Robbins's children entered the dining room, at which point the defendant lowered the gun to his side.

At this time, Robbins asked the defendant and Pelletier to go back outside, which they eventually did. Once they were outside on the apartment's porch, the defendant held the gun by his waistband. Robbins asked the defendant and Pelletier to leave, and offered to call them when D.J. returned, but the defendant responded that no one was leaving. When Robbins stated that she needed to bring one of her children to the doctor, the defendant responded that she could miss the appointment. Eventually, Pelletier provided Robbins with a phone and instructed her to call D.J. Robbins did so, and briefly spoke to D.J. Pelletier then took the phone from Robbins and handed it to the defendant, who walked down the porch to talk to D.J. By that point, the defendant had tucked the gun in his waistband or pocket. While the defendant was on the telephone with D.J., Robbins — in an attempt to get the defendant and Pelletier to leave — again offered to call Pelletier when D.J. returned if she left her name and telephone number. Pelletier provided this information, and she and the defendant, who by that time had finished the telephone call, then left on foot.

Thereafter, the Nashua police were contacted and spoke with Robbins and Sinclair. Robbins identified the defendant and Pelletier from photographic line-ups shown to her at the police station. Police arrested the defendant and

2

Pelletier at the defendant's residence later that day.  During a search of the defendant's residence conducted pursuant to a warrant, the police discovered a loaded Glock handgun with a round in the chamber.  The defendant was subsequently indicted on charges of burglary, criminal threatening of Sinclair with a firearm, and criminal restraint of Robbins.  At the close of the State's case, the defendant moved to dismiss the burglary and criminal restraint charges.  The trial court denied the motions, and a jury ultimately convicted the defendant of all three charges.  This appeal followed.

II

The defendant raises two issues on appeal.  First, he argues that the evidence offered at trial was insufficient to prove that his conduct exposed Robbins to a risk of serious bodily injury, as required for the crime of criminal restraint.  Second, he argues that the trial court erred when it denied his motion to dismiss the burglary indictment, as there was insufficient evidence to prove that he acted with the requisite criminal intent.  We examine these issues in turn.

"When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  State v. Saunders, 164 N.H. 342, 351 (2012) (quotation omitted).  We consider "all the evidence and all reasonable inferences therefrom in the light most favorable to the State."  Id. (quotation omitted).  "The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt."  Id. (quotation omitted).

A

We first address whether the evidence was sufficient to establish that, for purposes of RSA 633:2, I (2007), the defendant exposed Robbins to a risk of serious bodily injury.  To resolve this issue, we are required to engage in statutory interpretation.  "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  State v. Burke, 162 N.H. 459, 461 (2011) (quotation omitted).  "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice."  Id. (quotation omitted); see RSA 625:3 (2007).  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id. (citation omitted).  "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id. (quotation omitted).  "We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words."  Id. (quotation

3

omitted).  "Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation."  Id. (quotation omitted).

The criminal restraint statute, RSA 633:2, I, provides: "A person is guilty of a class B felony if he knowingly confines another unlawfully in circumstances exposing him to risk of serious bodily injury."  The State is thus required to prove three elements:  "(1) the actor must act knowingly; (2) the victim must be exposed to the risk of serious bodily injury; and (3) the act must confine the victim unlawfully."  Burke, 162 N.H. at 461.  The defendant challenges only whether there is sufficient evidence to establish a risk of serious bodily injury.

The Legislature has defined "serious bodily injury" as "any harm to the body which causes severe, permanent or protracted loss of or impairment to the health or the function of any part of the body."  RSA 625:11, VI (2007).  The criminal restraint statute requires only a risk of serious bodily injury, not the actual infliction of injury.  State v. Gibbs, 164 N.H. 439, 444 (2012).  In determining whether such a risk exists, the defendant's use or brandishing of a deadly weapon is a highly relevant consideration.  See RSA 625:11, V (2007) ("'Deadly weapon' means any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury."); Bell v. State, 693 S.W.2d 434, 438 (Tex. Crim. App. 1985) ("The danger of serious bodily injury is necessarily established when a deadly weapon is used in the commission of an offense.").

Although he acknowledges that a gun is capable of causing serious bodily injury, the defendant emphasizes that he did not point the gun at Robbins or specifically threaten her with the weapon, and argues that his mere possession of a gun did not expose Robbins to the risk of serious bodily injury.  In support of this argument, the defendant analogizes to our reasoning in Burke.  In Burke, the victim testified that the defendant "held [a] knife in a threatening manner, but never verbally threatened to use it or attempted to use it to harm her."  Id. at 460.  We observed:

> [T]he State properly conceded that the fact that the defendant possessed a knife during [the victim's] confinement does not affect the analysis because the defendant never verbally threatened to use the knife, never held it in close proximity to [the victim], and never attempted to harm [the victim] with it.  Thus, on these facts, the knife [was] irrelevant to the element at issue.

Id. at 462.

The analogy to Burke fails, however, as the defendant here did more than merely possess a gun. After entering Robbins's apartment with the gun, the defendant held it to Sinclair's head. The defendant verbally threatened to shoot Sinclair if he moved or spoke. The defendant engaged in this conduct in Robbins's presence, and continued to hold the gun in his hand throughout most of the time he subjected Robbins to confinement. Under these circumstances, a reasonable jury could have found that Robbins was exposed to the risk of serious bodily injury regardless of whether the defendant actually pointed the gun at her. Thus, we conclude that the trial court did not err in denying the motion to dismiss the criminal restraint indictment.

B

We next address the defendant's argument that there was insufficient evidence to prove that he acted with the criminal intent required for the crime of burglary. "The crime of burglary consists of two elements: (1) unauthorized entry; and (2) an intent to commit a crime therein." State v. Gordon, 161 N.H. 410, 415 (2011) (citation omitted); see RSA 635:1, I. The defendant does not challenge that there was an unauthorized entry. As to the element of intent, the defendant correctly points out that the language of RSA 635:1 is different from the language used in many other jurisdictions' burglary statutes, in that it requires the defendant to have the intent to commit a crime at the time of entry.[1] Thus, the State was required to prove that the defendant intended to commit a crime — in this case, an assault — at the time he entered Robbins's apartment.[2]

A defendant's intent often must be proven by circumstantial evidence. State v. Fuller, 147 N.H. 210, 214 (2001). "When the evidence is solely circumstantial, it must exclude all reasonable conclusions except guilt." State v. Marshall, 162 N.H. 657, 666 (2011). However, as we recently explained:

---

[1] RSA 635:1 states: "A person is guilty of burglary if he enters a building . . . with purpose to commit a crime therein," whereas the burglary statutes of many other jurisdictions require that an actor "enters or remains unlawfully" in a building with the intent to commit a crime. See, e.g., Ala. Code § 13A-7-5(a) (2006); Alaska Stat. § 11.46.310 (2012); Ariz. Rev. Stat. Ann. § 13-1506 (LexisNexis 2012); Ark. Code Ann § 5-39-201(a)(1) (2006); Colo. Rev. Stat. § 18-4-202(1) (2013); Conn. Gen. Stat. § 53a-102 (2013); Fla. Stat. Ann. § 810.02 (2010); Ga. Code Ann. § 16-7-1(b) (Supp. 2012); Ky. Rev. Stat. Ann. § 511.040 (LexisNexis 2008); Mont. Code Ann. § 45-6-204(1)(a) (2011); Or. Rev. Stat. Ann. § 164.215 (West 2003); S.D. Codified Laws § 22-32-1 (2006); Utah Code Ann. § 76-6-202(1)(c) (LexisNexis 2012); Wash. Rev. Code Ann. § 9A.52.020(a) (LexisNexis 2009).

[2] The trial court instructed the jury that the defendant had to have the specific intent to commit simple assault at the time of the entry, and the State does not challenge the correctness of this instruction.

5

The court does <u>not</u> determine whether another <u>possible</u> hypothesis has been suggested by [the] defendant which <u>could</u> explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the [State] and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.

<u>State v. Germain</u>, 165 N.H. 350, 361-62 (2013) (emphasis in original) (quotations omitted).

Intent may be inferred from the defendant's conduct under all the circumstances. <u>State v. Meloon</u>, 124 N.H. 257, 259 (1983); <u>see also</u> <u>State v. Reed</u>, 114 N.H. 377, 379 (1974) (finding sufficient evidence of intent to commit a crime where there was "[e]vidence of unexplained entry by breaking into a stranger's home, findably by the defendant and another, coupled with their suspicious attempt to conceal themselves while in the yard").

Based upon the totality of the evidence, a rational jury could have found that, at the time the defendant entered the apartment, he intended to assault D.J. (or other occupants) if necessary to collect the money that Pelletier claimed was owed to her "for prostitution." <u>See</u> Model Penal Code § 2.02(6) (1985) ("When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense."); <u>see also</u> <u>Holloway v. United States</u>, 526 U.S. 1, 10-11 (1999) ("[A] defendant may not negate a proscribed intent by requiring the victim to comply with a condition the defendant has no right to impose."). Further, a rational jury also could have determined that the defendant's alternative hypothesis — that he went to the apartment to verbally confront D.J., but not to assault him — was not "reasonable."

The jury could readily have found that the defendant went to the apartment to act as the "strong-arm" for his co-defendant (Pelletier) in collecting a claimed debt. Armed with a gun, he entered the apartment by "barging" past Robbins, despite the fact that Robbins stated that D.J. was not home. He then searched the apartment for D.J. While in the apartment, the defendant placed his gun to Sinclair's head, threatening to "blow [Sinclair's] head away" if he moved or spoke. Finally, when the police searched the defendant's residence, they recovered a loaded Glock handgun with a round in the chamber. Based on the totality of these circumstances, a rational jury could have found that the defendant's "verbal confrontation only" scenario did not constitute a reasonable view of his intent when he entered the apartment.

For this reason, the trial court properly denied the defendant's motion to dismiss the burglary charge.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.