**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0522, <u>State of New Hampshire v. Stephen O'Neill</u>, the court on June 24, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Stephen O'Neill, was convicted, following a jury trial in Superior Court (<u>Brown</u>, J.), of falsifying physical evidence. <u>See</u> RSA 641:6 (2007). He argues that the evidence was insufficient to sustain the conviction. He raises this issue as plain error. <u>See</u> <u>Sup. Ct. R.</u> 16-A.

For there to be plain error, the defendant must first establish that there was error; that is, he must establish that the evidence in fact was insufficient to sustain his conviction. <u>See</u> <u>State v. Guay</u>, 162 N.H. 375, 380-81 (2011). When examining the sufficiency of evidence to support a criminal conviction, we objectively review the record to determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. <u>See</u> <u>State v. Zubhuza</u>, 166 N.H. 125, 128 (2014). We consider the evidence and all reasonable inferences from it in the light most favorable to the State. <u>See</u> <u>id</u>.

The falsifying physical evidence indictment alleged that the defendant, "believing that an official proceeding or investigation [was] pending or about to be instituted and acting in concert with or aided by Tristan Stone, concealed or removed an AR15 rifle with a purpose to impair its verity or availability in such proceeding or investigation." Thus, to convict the defendant, the State was required to prove either: (1) that he (a) believed that an official proceeding or investigation was pending or was about to be instituted, (b) concealed or removed an AR-15 rifle, and (c) had a purpose to impair the rifle's verity or availability in the proceeding or investigation, <u>see</u> RSA 641:6, I; or (2) that he was an accomplice to Tristan Stone, who committed such conduct, <u>see</u> <u>State v. Brooks</u>, 164 N.H. 272, 289 (2012) (language in an indictment alleging that a defendant "acted in concert with" another ordinarily charges the defendant both as a principal and as an accomplice to the other in the crime). To convict the defendant as an accomplice, the State was required to prove that he: (1) had the purpose to make the crime succeed; (2) solicited, aided, or attempted to aid Stone in committing the offense; and (3) shared the requisite state of mind for the offense. <u>See</u> <u>State v. Young</u>, 159 N.H. 332, 338 (2009).

In this case, the defendant does not dispute that he believed an official proceeding or investigation was about to be instituted, that Stone concealed or removed an AR-15 rifle, or that Stone's purpose was to impair the rifle's availability in that proceeding or investigation. Instead, he argues that the State failed to prove that he himself concealed or removed the rifle, or that he was Stone's accomplice in its concealment or removal. We disagree.

The evidence at trial established that the defendant, a convicted felon, owned the rifle in question, possessed it at the time of the events giving rise to the official proceeding or investigation that he knew would be instituted, and threatened others with it during the course of those events. Those events led to an altercation in which the defendant fatally stabbed another person. After the stabbing, the defendant picked up the AR-15, which had been taken from him during the altercation and cast aside, and fled with Stone into the woods. In the woods, Stone and the defendant met McCormick and Mahoney, two other persons who had been involved in the events of the evening. The defendant was holding the rifle and a knife, and said that he had just stabbed someone. Mahoney called his parents and asked that they contact the police. The defendant told the group that he was not supposed to have guns, and that he did not want to get in trouble.

All four individuals ran through the woods to a park where they had originally entered the woods earlier in the evening; the defendant and Stone were behind Mahoney and McCormick. When they arrived at the edge of the woods, the defendant no longer had the rifle. The last time Mahoney recalled seeing the rifle was when they were running through the woods. The police later found the rifle underneath some frozen clothing in an area described as a "homeless camp." Stone told the police that he had hidden the AR-15 because the defendant had told them that he was not supposed to have any guns and did not want to get into trouble.

When the police initially interviewed the defendant, he did not mention the AR-15. When the police later asked him "at what point did he get" the AR-15, he stated that he had only had an AR-15 "airsoft" rifle, or a replica rifle that only shoots plastic BBs. When the police then asked at what point he had gotten the "real" AR-15, the defendant claimed that Stone had given it to him earlier in the evening. The defendant told the police that, following the stabbing, he had "passed off the rifle to" Stone as they were running through the woods, and that Stone "had just thrown the rifle into the snow." In a subsequent interview on the following day, the defendant told the police that the AR-15 belonged to Stone, that Stone possessed the AR-15 during their flight through the woods following the stabbing, and that Stone "had not just thrown [the rifle] off into the woods, but he had actually hidden it and placed it underneath something. And then they continued on." The defendant explained that "it was probably just a good idea not to have the AR15 with

2

them for safety reasons when they're confronting the police and coming out in case the police were there." The defendant stated that he had been aware that Mahoney had contacted the police, and that the police were coming.

In sum, the jury had evidence before it that, during the evening in question, the defendant: (1) owned and possessed the AR-15, and threatened others with it; (2) knew that he was not supposed to possess the AR-15; (3) picked the AR-15 up and fled with it after he had fatally stabbed someone; (4) learned during the flight that the police were en route; (5) told Stone that he was not supposed to possess firearms and did not want to get into trouble; (6) handed the AR-15 to Stone, who hid it because they were likely to confront the police, before "continu[ing] on" with Stone; and (7) repeatedly lied to the police regarding the AR-15, his possession and ownership of it, and its disposal. Viewing this evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that a rational jury could have found, beyond a reasonable doubt, either that the defendant assisted Stone in hiding the AR-15, or that he solicited him to hide it.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**

3