**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0023, <u>State of New Hampshire v. Michael Regan</u>, the court on October 17, 2017, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Michael Regan, appeals his conviction by a jury of burglary. <u>See</u> RSA 635:1 (2016). On appeal, he argues that the Superior Court (<u>O'Neill</u>, J.) erred by denying his motion to set aside the verdict for insufficient evidence that he entered the victim's home. He also argues that the trial court erred by failing to reverse his conviction based upon the prosecutor's allegedly improper closing argument. We affirm.

In considering the defendant's challenge to the trial court's denial of his motion to set aside the verdict, we review the entire trial record because the defendant chose to present a case after the trial court denied his motion to dismiss. <u>See</u> <u>State v. Littlefield</u>, 152 N.H. 331, 350 (2005). To prevail upon his challenge to the sufficiency of the evidence, the defendant must show that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. <u>State v. Belleville</u>, 166 N.H. 58, 61 (2014).

When the evidence as to one or more of the elements of the charged offense is solely circumstantial, it must exclude all reasonable conclusions except guilt. <u>Id</u>. at 62. In reviewing the sufficiency of circumstantial evidence, we do not determine whether another possible hypothesis that has been suggested by the defendant <u>could</u> explain the events in an exculpatory fashion. <u>State v. Zubhuza</u>, 166 N.H. 125, 130 (2014). Rather, we evaluate the evidence in the light most favorable to the State and determine whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. <u>Id</u>. Moreover, when the evidence is solely circumstantial, we still consider it in the light most favorable to the State and examine each evidentiary item in context, not in isolation. <u>Belleville</u>, 166 N.H. at 62.

To convict the defendant of burglary, the State had to prove, beyond a reasonable doubt, that he entered the victim's home unlawfully at night with the intent to commit a crime therein. <u>See</u> <u>Zubhuza</u>, 166 N.H. at 129-30; <u>see also</u> RSA 635:1, I ("A person is guilty of burglary if he . . . enters . . . unlawfully . . . [an] occupied structure with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged

to enter."), II ("Burglary is a class B felony unless it is perpetrated in the dwelling of another at night."), III ("'Night' shall mean the period between 30 minutes past sunset and 30 minutes before sunrise."). The defendant argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he entered the victim's home. We disagree.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant entered the victim's home. The victim testified that, on the night of the burglary, she saw two men in her home, rifling through her things. The men had entered her home by breaking the window in the home's downstairs bathroom. Responding officers found a footprint with the same "zigzag" pattern as appeared on the soles of the defendant's sneakers "just outside" the broken window. They also found one of the defendant's sneakers and his backpack right next to a wooded area, which was approximately 200-300 feet from the victim's residence. Police found the defendant in the wooded area. He was missing a sneaker. Kevin Gobeil, who later pleaded guilty to the burglary, was in the same wooded area. From this evidence, viewed in the light most favorable to the State, a rational trier of fact could have reasonably inferred that the defendant entered the victim's home through the broken window below which his footprint was found.

The defendant argues that the evidence was insufficient to exclude the reasonable, alternative hypothesis that he was an innocent bystander to the burglary committed by Gobeil and a man whom the defendant identified as "Marcus." Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found that this alternative hypothesis was not reasonable. See Zubhuza, 166 N.H. at 131.

The defendant next asserts that the trial court erred by not reversing his conviction based upon the prosecutor's allegedly improper closing argument. During closing argument, the prosecutor said the following to the jury: "Now, the Defendant testified in this case. He shared a story of him, and Mr. Gobeil, and Marcus. Now, if you were surprised to all of a sudden hear about this man named Marcus, I don't blame you. I'd never heard of him before that moment, either." Defense counsel objected to the statement, arguing that it intimated that the defendant was required "to come forward with some story, which he has no obligation" to do. Defense counsel further stated that the defendant "doesn't have to share anything at any point. And constitutionally, he doesn't have to share, so — ."

The trial court overruled the objection, and the prosecutor continued: "So this man, Marcus — his name never came up in the officer[s'] investigation that they conducted in this case." Subsequently, the prosecutor told the jury, "I want to remind you — so Defense counsel correctly stated it's my job to prove this case beyond a reasonable doubt."

Thereafter, the trial court instructed the jury:

> The Defendant enters this Court as an innocent person and you must consider him to be an innocent person until the State convinces you beyond a reasonable doubt that he is guilty of every element of the alleged offense. If after all the evidence and arguments you have a reasonable doubt as to Defendant's having committed any one or more of the elements of the offense, then you must find him not guilty.
>
>      . . . .
>
> If you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crime charged, you must find the Defendant not guilty.

The trial court also instructed the jury that the arguments by the lawyers in the case "are not evidence."

During their deliberations, the jury submitted the following question to the court: "In New Hampshire law, what legal obligation is the defense team under in disclosing relevant facts, i.e., Marcus at the last minute?" After consulting with counsel, the trial court responded, "[T]he jury is to utilize the law as provided by the court in deliberations. As instructed, the burden is on the State to prove the defendant guilty beyond a reasonable doubt. The Defendant has no legal obligation." Defense counsel indicated that he approved of the court's answer.

After the jury convicted him, the defendant moved to set aside the verdict and for a new trial based upon the prosecutor's allegedly improper "burden-shifting" statement. The trial court denied the motion, stating that it did "not find any evidence that the burden of proof was improperly shifted to the defendant." The court concluded that in light of its jury instructions and its response to the jury's question, which the court formulated "[w]ith the review and approval of counsel," the jury "was clearly informed that the burden of proof rested solely on the State."

On appeal, the defendant argues that the prosecutor's comment "improperly shifted the burden of proof" and "essentially implied that [his] story was not believable because it only came to light at trial." He contends that the trial court erred by failing to issue a curative instruction after the prosecutor's closing and that "[b]ecause the trial court did not properly instruct the jury, [he] was penalized for exercising his constitutional right to be free from self-incrimination thus affecting the fundamental fairness of the proceeding." We interpret the defendant's argument to be that the trial court's failure to issue a curative instruction following the prosecutor's closing argument and, subsequently, to grant the defendant's motion to set aside the verdict and order

3

a new trial violated the due process guarantees of the State and Federal Constitutions.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV.

We first address the defendant's argument under the State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).  "Under New Hampshire law, a prosecutor has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence."  State v. Addison, 165 N.H. 381, 547 (2013) (quotation and brackets omitted).  We first must determine whether the challenged remarks amounted to improper advocacy.  Id.  If the statements were improper, we then determine whether the error requires reversal of the verdict.  Id.  The latter determination involves balancing three factors:  (1) whether the prosecutor's misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case.  Id. at 547-48.

To assess whether the State advanced an improper argument, we consider the challenged remarks in the context of the case.  Id. at 548.  Here, viewed in context, we conclude that the prosecutor's challenged statement constitutes "a fair response to a position advanced by defense counsel."  Id.  The prosecutor's statement was offered in response to the suggestion by defense counsel that the State neglected to pursue important investigative avenues.  See State v. Fowler, 132 N.H. 540, 546 (1989).  During his closing, defense counsel stated:

> [I]t seems to me that, if they had heard what [the victim] said about the two men who were in her house, they would have looked a little further, you know.  Police do a good job most of the time and I don't have any problem with that, you know.
>
> I mean, that's good for all of us.  But it seems to me that, based on what they learned from [the victim], they might have kept looking.
>
> So they found two guys irrespective of what [the victim's] representations as to what the two guys looked like.  They found two guys and were done.  Right?
>
> . . . .
>
> It's kind of hard to figure out what they were thinking.  If they had paid attention to her description, why would they think that they got two guys? . . .  They didn't finish the job.
>
> And that's no recrimination against them.  That's just the reality.  So none of these officers kept looking.

4

Because defense counsel's closing argument suggested that the police investigating the case should have discovered that someone other than Gobeil and the defendant were involved in the burglary, it was a fair response for the State to point out in its closing that, before the defendant testified, the police had no basis for believing that a person named Marcus played any role in it. See State v. Cote, 143 N.H. 368, 375 (1999) (challenged prosecutorial remarks were akin to a legal argument and were a permissible response to the defense counsel's closing argument); State v. Boetti, 142 N.H. 255, 262 (1997) (trial court has latitude to permit counsel to respond to opposing counsel's closing argument); see also United States v. Robinson, 485 U.S. 25, 31-33 (1988) (no constitutional violation where prosecutor's reference in closing argument to defendant's opportunity to testify is fair response to claim made by defendant or his counsel).

To the extent that the defendant argues that his state and federal constitutional rights to be free from compelled self-incrimination were violated in this case, we disagree. Such rights "were not implicated in this case because the defendant chose to testify in his own defense." United States v. Cabrera, 201 F.3d 1243, 1250 (9th Cir. 2000). Because the defendant testified in his own defense, the prosecutor was entitled to express doubt about his veracity. See id. Doing so does not shift the burden of proof or persuasion. Id.

Thus, we conclude that the defendant has failed to establish that the prosecutor's statement during closing argument amounted to improper advocacy in violation of the defendant's due process rights under the State Constitution. See Addison, 165 N.H. at 563; see also N.H. CONST. pt. I, art. 15. The defendant makes identical arguments under the Federal Due Process Clause, without engaging in a separate analysis. See Addison, 165 N.H. at 563; see also U.S. CONST. amends. V, XIV. Nor does he argue that the due process protections under the State and Federal Constitutions differ in this context. We conclude that the Federal Constitution affords the defendant no greater protection than does the State Constitution under these circumstances, and, accordingly, we reach the same conclusion under the Federal Constitution. See Addison, 165 N.H. at 563.

Affirmed.

Dalianis, C.J., and Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**

5