Rockingham
No. 2008-475

THE STATE OF NEW HAMPSHIRE

v.

GURRIE FANDOZZI, JR.

Argued: September 23, 2009
Opinion Issued: March 10, 2010

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Mark L. Sisti*, of Chichester, on the brief and orally, for the defendant.

CONBOY, J. The defendant, Gurrie Fandozzi, Jr., was convicted by a jury of seven counts of first-degree assault. *See* RSA 631:1 (2007). He appeals orders of the Trial Court (*Nadeau*, J.) denying his motions to dismiss, motions *in limine*, motion for a mistrial, motions to set aside the verdict or for a new trial, and motion to conduct juror *voir dire*. We affirm.

The record evidences the following facts. When their six-month-old son, G.F., began exhibiting cold symptoms, the defendant and his wife, Tammy Fandozzi, brought him to their pediatrician. The pediatrician diagnosed G.F. with a viral cold. The child's condition worsened that night and he began to have difficulty breathing. The defendant called 911 early the next morning and, at the direction of the dispatcher, administered CPR to the child until the EMTs arrived. While en route to Parkland Medical Center in Salem, New Hampshire, the EMTs made three unsuccessful attempts to intubate G.F. The Parkland Medical staff determined that the child should be transported via helicopter to Children's Hospital in Boston, Massachusetts. At the hospital, a doctor informed the Fandozzis that although G.F. was in stable condition, he was suffering from several broken rib bones. A social worker told the Fandozzis that she was required to notify the State of New Hampshire of G.F.'s injuries.

In 2007, the defendant was indicted on twenty-six counts of first degree assault, alleging that he recklessly inflicted twenty-six bone fractures upon G.F. After a ten-day trial in November 2007, the defendant was convicted of seven charges and acquitted of the remaining nineteen. The court sentenced the defendant to fifteen to thirty years in the state prison.

*I. Motion to Dismiss Indictments or Alternative Relief*

The defendant argues that the trial court erred in denying his motion to dismiss the indictments or re-depose the State's primary witness. The State originally indicted the defendant on five counts of first-degree assault. Following the deposition of the State's medical expert, the State re-indicted the defendant on twenty-six counts of first-degree assault, one for each of the child's broken bones. The defendant asserts that the court should have dismissed the new indictments or permitted him to re-depose the witness.

■ "A trial court's decision to deny a motion for a deposition . . . is reviewed by this court under the [unsustainable exercise] of discretion standard. Accordingly, we will overturn the trial court's rulings only if the defendant can show that they are clearly untenable or unreasonable to the prejudice of his case." *State v. Chick*, 141 N.H. 503, 504 (1996) (citations omitted). "[T]he court, in its discretion, may allow a deposition when a party has shown, by a preponderance of the evidence, that the deposition is needed to ensure a fair trial, avoid surprise or for other good cause shown." *Id.* at 505 (quotation omitted).

■ In denying the motion, the trial court found that "[t]he new indictments cover allegations contained within the old indictments and discovery" and "[d]efense counsel was able to question the Doctor with respect to each bone contained in each of the new indictments." Based upon these findings, we hold that the filing of the new charges did not impede the defendant's ability to prepare a defense. Because the defendant suffered no prejudice, we further hold that the trial court's ruling did not constitute an unsustainable exercise of discretion.

## II. Motions in Limine

The defendant challenges the trial court's denial of his motions *in limine* to exclude certain evidence from trial. The defendant first argues that the trial court erred in denying his motion to exclude testimony from a pediatrician, arguing that she was unqualified to provide expert opinion on the causes of the bone fractures. Specifically, he argues that the doctor lacked radiological training and she relied upon the opinion of another doctor to reach her conclusions.

> Because the trial judge has the opportunity to hear and observe the witness, the decision whether a witness qualifies as an expert is within the trial judge's discretion. We will not reverse that decision absent a clearly unsustainable exercise of discretion. Our inquiry is whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. To prevail on appeal, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.

*Goudreault v. Kleeman*, 158 N.H. 236, 245 (2009) (citations and quotations omitted). In addressing the motion, the trial court determined that the doctor "ha[d] the appropriate special knowledge to evaluate how another doctor's reading of G.F.'s x-rays relate[d] to what she knows about the appearance of a child's bones when they are broken, healing or intact." Accordingly, the court ruled that the pediatrician was properly qualified as an expert pursuant to New Hampshire Rules of Evidence 702 and 703.

■ Rule 702 provides that, "if scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." To determine whether a witness is qualified as an expert, the court considers whether the witness "by either study or experience, has knowledge on the subject-matter of his [or her] testimony so superior to that of people in general concerning it that the witness's views will probably assist the trier of fact." *McMullin v. Downing*, 135 N.H. 675, 679 (1992) (quotations and brackets omitted).

■ Here, the trial court determined that the pediatrician has knowledge superior to that of a layperson regarding broken bones and "has focused her career on evaluating children's injuries to determine whether they are victims of abuse. Because it is her job to determine whether a child's injuries are accidental or inflicted, [the doctor] has meaningful experience working with other doctors to interpret x-rays." On the record, we find no error in the trial court's ruling permitting the pediatrician's testimony.

The defendant also challenges the trial court's denial of his motion to exclude evidence relating to: (1) marital conflict between him and his wife; (2) his strained relationship with his in-laws; and (3) evidence that the division for children, youth, and families (DCYF) had brought abuse and neglect petitions against him and his wife. He argues that all of this evidence was irrelevant and unfairly prejudicial.

■ All evidence must be relevant to be admissible. N.H. R. Ev. 402. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. As to the evidence of marital conflict, the court found that the evidence was probative of the defendant's state of mind and "how he handled the pressures of caring for a newborn and is relevant to whether he acted recklessly at the time." The court found the evidence regarding the defendant's strained relationship with his in-laws to be similarly probative. We conclude that given the nature of the charges against the defendant, the court reasonably found that such evidence was relevant to prove that the defendant acted with a reckless state of mind.

■ As to evidence regarding the DCYF abuse and neglect petitions, the court found that such testimony was probative of the defendant's wife's and in-laws' motivation to lie. The court reasoned that because DCYF could secure a transcript of the criminal trial for use in later family court proceedings against the Fandozzis, the witnesses may have been motivated

to lie at trial to protect the defendant and his wife. Under these circumstances, we conclude that the court did not err in finding the evidence relevant.

 The defendant argues that, notwithstanding its relevance, the admission of all this evidence was unfairly prejudicial because it portrayed him as someone who is subject to "stressors" and is unable to control his emotions. New Hampshire Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence is unfairly prejudicial

> if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case.

*State v. Giddens*, 155 N.H. 175, 179-80 (2007) (citation and quotation omitted).

> Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove his guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial. Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged.

*Id.* at 180. Under the circumstances of this case, we cannot conclude that this evidence had an undue tendency to induce the jury to find against the defendant based upon emotion or some other improper basis. Moreover, any danger of unfair prejudice from this evidence did not substantially outweigh its probative value. Accordingly, we hold that the trial court's admission of these statements was not unreasonable or untenable.

The defendant also moved to exclude certain testimony from an automobile mechanic. The trial court explained,

> The defendant seeks to prevent the [S]tate from introducing testimony of an auto mechanic about what he saw when the defendant brought the three family vehicles to the garage for inspection. The inspections occurred on three separate days within a week to ten days of G.F.'s admission to the hospital. The mechanic will apparently testify about the defendant's disparate

treatment of his two children, A.F. and G.F., as well as his observations of G.F. The defendant argues that the auto mechanic's testimony is not relevant or probative. The [S]tate counters that it is relevant because the mechanic will testify that he observed the defendant's favoritism of A.F., which explains the abuse of G.F. but not of A.F. In addition, the [S]tate argues that the mechanic's observations of G.F. in the days before his hospitalization showed that he was despondent and unresponsive.

The defendant argues that admission of this evidence was erroneous because it constituted impermissible propensity evidence prohibited by New Hampshire Rule of Evidence 404(b). Although "[e]vidence of other crimes, wrongs, or acts" is inadmissible "to prove the character of a person in order to show that the person acted in conformity therewith," such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." N.H. R. Ev. 404(b). The defendant asserts that the jury could have impermissibly concluded that he committed the crimes with which he was charged on the basis of "wrongful conduct" in leaving his son in the car during the automobile inspection.

In explaining its decision to allow the testimony, the trial court stated:

Testimony about the defendant's differing treatment of the two children is relevant to explain the defendant's motivation in harming one, but not the other. See N.H. R. Ev. 401. Moreover, the mechanic's description of the baby's appearance and demeanor is highly probative on the issue of whether the injuries were inflicted or accidental, and the danger of unfair prejudice does not outweigh the probative value. See N.H. R. Ev. 403.

Because the evidence was relevant, offered for reasons other than to prove the defendant's character, and the trial court found that its probative value was not outweighed by the danger of unfair prejudice, we conclude that the trial court's ruling was not clearly untenable or unreasonable.

*III. Motion to Dismiss and Motion to Set Aside the Verdict*

At the conclusion of the State's case, the defendant moved to dismiss based upon insufficient evidence and "lack of territorial jurisdiction." He also moved to set aside the verdict, asserting that the evidence was insufficient to prove beyond a reasonable doubt that he committed the offenses. The court denied each of the motions. "Our standard for review of

the trial court's denial of a defendant's motion to dismiss based upon the sufficiency of the evidence is well established . . . ." *State v. Flodin*, 159 N.H. 358, 362 (2009).

> To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.

*Id.* (quotation omitted). To succeed on his motion to set aside the verdict, the defendant has "the burden of establishing that the evidence, viewed in its entirety and with all reasonable inferences drawn in favor of the State, was insufficient to prove beyond a reasonable doubt that he was guilty of the crime charged." *State v. Kousounadis*, 159 N.H. 413, 421 (2009). Given that this standard is the same as that applied in reviewing the denial of the motions to dismiss, we address the defendant's arguments concurrently.

 The defendant argues that the State failed to produce evidence that the injuries occurred in New Hampshire. The uncontroverted evidence at trial was that the only time G.F. was out of New Hampshire was when he was brought to Connecticut by the defendant's wife to visit her friends and family. All of the individuals who cared for G.F. while he was in Connecticut appeared at trial and testified that nothing improper occurred and that he was not injured while in their care. Because the jury could reasonably have accepted such testimony as true, the jury could have concluded, beyond a reasonable doubt, that G.F.'s injuries occurred in New Hampshire.

 The defendant also argued that the evidence was insufficient to convict him beyond a reasonable doubt. Specifically, he contends that all the evidence was circumstantial and failed to eliminate other possible causes of the child's injuries, including accidents, medical reasons, and the defendant's performance of CPR on the child. The test, however, is not whether the State ruled out all other potential causes of the injuries, but whether the State presented evidence sufficient to exclude all rational conclusions except the defendant's guilt. *Flodin*, 159 N.H. at 362. By the defendant's own admission, he was "with the kids ninety-nine point nine percent of the time." The State's medical expert testified that six of G.F.'s rib fractures were at least one week but less than six weeks old from the date he was examined at the hospital. Two other fractures were "aged" at zero to six

weeks. Given this evidence, the jury could have reasonably rejected the suggestion by the defense that the injuries occurred when the defendant accidentally fell while holding G.F. four months prior to G.F.'s hospitalization. The State's medical expert also opined that the fractures were not caused by a genetic or metabolic condition. Ultimately, the expert concluded that all the fractures were the result of abuse. There was also evidence that after learning of G.F.'s injuries, the defendant's demeanor was uncharacteristic of a parent whose child was injured by unknown causes. Upon review of the entire record, and viewing all the evidence in the light most favorable to the State, we hold that there was sufficient evidence for the jury to conclude, beyond a reasonable doubt, that the defendant recklessly caused fractures to seven of G.F.'s bones.

### IV. Motion for Mistrial

The defendant next argues that the court erred in denying his motion for a mistrial because a State's witness offered inadmissible evidence. Prior to trial, the defendant filed a motion *in limine* to preclude his wife's sister, Susan Egan, from testifying about the following statement she made to the police when she learned that G.F. had been injured: "When I first got the call about [G.F.] being at the hospital and that he was injured, I got a cramp in my stomach and said to myself, that bastard did something to that baby." The court granted the defendant's motion, ruling: "A layperson's testimony must be based on personal knowledge.... Accordingly, while Ms. Egan may testify about her observations, she may not give the opinion that G.F. was abused."

On direct examination at trial, Ms. Egan testified that the defendant "did a great job" as a full-time parent. On cross-examination by the defense, she stated that the defendant was "wonderful ... with the children" and she had no concerns regarding his ability to care for them. The court agreed with the State that these statements, in light of her testimony on direct examination, created a misleading impression "that this witness had no concerns about the defendant's ability to care for the children while her clear indication to the detective was that she did have concerns." The court therefore permitted the State, on rebuttal, to impeach Ms. Egan with her statement to the police. The court instructed the jury to consider Ms. Egan's inconsistent statements only to assess her credibility, not for their truth. The defendant moved for a mistrial, alleging that the court erred in permitting the State to impeach Ms. Egan with the statement. The court denied the defendant's motion.

The defendant disputes that Ms. Egan's testimony created a misleading impression. Rather, he argues that Ms. Egan testified to her observations

of the defendant and his children, not to her opinion of their interactions. The defendant asserts that no rebuttal was warranted and, therefore, the statements she made to the police were inadmissible. "Because the trial court is in the best position to gauge the prejudicial nature of the testimony being challenged, the court's ruling on a motion for mistrial will not be overturned absent an unsustainable exercise of discretion." *State v. Gibson*, 153 N.H. 454, 459-60 (2006).

The "specific contradiction" doctrine is "applied when one party has introduced admissible evidence that creates a misleading advantage and the opponent is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage." *State v. Wamala*, 158 N.H. 583, 589 (2009).

> For the specific contradiction doctrine to apply, a party must introduce evidence that provides a justification, beyond mere relevance, for the opponent's introduction of evidence that may not otherwise be admissible. The initial evidence must, however, have reasonably misled the fact finder in some way. . . . The trial court is in the best position to gauge the prejudicial impact of particular testimony. Therefore, we will not upset the trial court's ruling on whether the defendant opened the door to prejudicial rebuttal evidence absent an unsustainable exercise of discretion.

*Id.* at 589-90 (citations omitted).

Following Ms. Egan's statement on direct examination regarding the defendant's "great" parenting skills, the defense capitalized on this comment by eliciting on cross-examination further testimony from Ms. Egan to the effect that she had no concerns regarding the defendant's ability to care for the children. Because this further testimony, in the context of Ms. Egan's initial testimony, could reasonably have misled the jury, the trial court was warranted in permitting the rebuttal evidence to which the defense had "opened the door." *Id.* at 590. Moreover, the trial court's limiting instruction to the jury mitigated the potential for unfair prejudice to the defendant resulting from admission of the rebuttal testimony. *Id.* at 591. Accordingly, we find that the trial court did not unsustainably exercise its discretion in denying the defendant's motion for a mistrial.

*V. Motion to Set Aside the Verdicts*

The defendant argues that the trial court erred in denying his motion to set aside the verdict because the jury reached an impermissible "compro-

mise" verdict. Following the defendant's conviction, a juror contacted the county attorney's office in response to the prosecutor's public comments that she was confused by the jury's verdicts. The juror's email stated in pertinent part:

> I was juror #4 on this case. The news media has said you may be a little baffled as to our decision. . . . Do not look at the verdict as anything but a win. Mr. Fandozzi will be going away for many years. I would be very willing to discuss our rationale for the verdict as we were very concerned about the message our verdict may sen[d].

After waiting the required thirty days from the verdict, an investigator from the county attorney's office called the juror, requesting clarification of his comments. The investigator reported, in pertinent part, as follows:

> [Juror #4] said that they were having a problem with the fact that this was a circumstantial case and that they were struggling with the fact that Mrs. Fandozzi might have done this. He went on to say that there was nothing that was presented to them that would indicate she didn't do it. . . .

> [H]e said that there were "questions in their minds as to who actually did this" and they were "not convinced 100% that he did it." He told me that the jury felt that the parents were "in cahoots," and that whoever did this, the other one was covering up. . . .

> He said that there was some discussion by some members of the jury that there was no way they were going to find this guy guilty of all the charges and force him to spend the rest of his life in prison on a circumstantial case. [The juror] said that in the end, they "compromised" and found him guilty of a few of the charges, leaving the other charges on the table in the event [the State] wanted to prosecute the wife. He then told me that "if he didn't do it, then he's covering up for her and that at least they got one of them."

The investigator also questioned five other jurors. The first juror explained that during initial deliberations, the jury considered all twenty-six charges together to determine the defendant's guilt or innocence. Because they were unable to reach an early consensus, the jury decided to review and consider each charge separately. Applying this method, the jury unanimously decided that the defendant caused seven of the charged

injuries. The juror told the investigator that while some of the jurors believed that the defendant's wife could have caused some of the injuries, they all agreed that only the defendant could have caused the seven injuries for which he was found guilty. The second juror similarly told the investigator that the jury focused on one indictment at a time, discussed "each individual bone," and agreed that the defendant was responsible for fracturing seven specific bones. Applying this process, the jury reached "a compromise" and agreed on the seven findings of guilty. When the investigator asked a third juror whether the jury "compromised" in reaching its verdict, the juror explained that "[t]he compromise was excluding the injuries that were not isolated to the father." A fourth juror stated that the jury was unanimous in concluding that the defendant's wife was not responsible for any of the injuries reflected in the seven guilty verdicts rendered against the defendant. The fifth juror explained that the jury "exclud[ed] some of the injuries that could have been caused by either the husband or the wife, and ultimately all agreed that the husband was the only one who could have caused the injuries he was found guilty of."

The investigator's reports of these juror communications were brought to the attention of the trial court, who ordered they be disclosed to the defendant. As a result, the defendant filed a motion to set aside the verdicts, alleging juror misconduct. The trial court considered the investigator's reports and the parties' post-trial pleadings, reconvened the jury, and interviewed each juror on the record, with the defendant and counsel present. The trial court ultimately found no juror misconduct, and denied the motion.

In asserting that denial of the motion was error, the defendant points to juror #4's comments that "[the jury] compromised and found him guilty of a few of the charges, leaving other charges on the table in the event [the State] wanted to prosecute the wife." He argues that the comments demonstrate that the "State failed to meet its constitutional burden of proof beyond a reasonable doubt." We will uphold a trial court's denial of a motion to set aside the verdict unless the ruling constitutes an unsustainable exercise of discretion. *State v. Spinale*, 156 N.H. 456, 466 (2007).

■■■ "It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." *State v. Goupil*, 154 N.H. 208, 218 (2006) (quotations omitted). When a trial court invokes its duty to investigate allegations of juror misconduct, the inquiry "is a fact-specific determination, which we will not reverse absent an unsustainable exercise of discretion or a finding that the decision is against the weight of the evidence." *Id.*

■ It is axiomatic that "jurors are not to reach compromise verdicts based on sympathy for the defendant or to appease holdouts." *State v. Taylor*, 141 N.H. 89, 95 (1996) (quotation omitted). As the trial court noted, however, "[t]he use of the word 'compromise' to describe the manner in which the jurors resolved the case[] does not mean the court should ascribe the technical, legal definition of 'compromise' in evaluating the appropriateness of the verdicts." The fact that jurors describe the deliberative process as one of compromise does not necessarily render the verdicts unjust.

■ Here, the trial court reconvened the jury and conducted individual *voir dire*. Based upon the juror's testimony during *voir dire*, the court concluded that there had been no misconduct:

> At that time, juror #4 stated unequivocally that he followed the court's instructions, based his verdict only on the evidence presented and the law provided, understood that the verdicts must be unanimous, and determined that the defendant alone committed the 7 offenses for which he was found guilty. In addition, when questioned by the investigator, five other jurors explained that no compromise verdict occurred. Finally, the remaining 11 jurors all testified that the verdicts were a result of the proper application of the law and evidence, and not the result of a compromise in which they abandoned their beliefs about the defendant's guilt or innocence.

As the trial court explained, jurors' common use of the word "compromise" may appropriately describe the give and take which customarily occurs in jury deliberations. Having satisfied itself that the jury did not engage in misconduct, the trial court reasonably exercised its discretion in denying the defendant's motion to set aside the verdict.

## VI. Motion to Conduct Juror Voir Dire

The defendant argues that the trial court erred in declining to ask his proposed questions of the jurors. Although the trial court conducted *voir dire* of each juror, the defendant contends that the questions were "insufficient to probe the specific issue; that is, the rationale for the jury's verdict."

■ Here, the trial court inquired of each juror: whether the jury followed the court's instructions during deliberations; whether the jury based its verdicts only upon evidence presented in court and the law provided by the judge; whether the jury agreed that the defendant was

guilty beyond a reasonable doubt of the seven offenses for which he was convicted; whether the jury understood that any verdict must be unanimous; whether each verdict was unanimous; whether the potential punishment was a factor in deciding that the defendant was guilty of the crimes charged; and whether the jury decided beyond a reasonable doubt that it was the defendant, and not his wife, who committed the offenses for which he was convicted. The jurors' responses to this inquiry were sufficient to satisfy the court that no misconduct occurred. In light of the trial court's thorough *voir dire*, its decision not to further inquire into the matter by asking the defendant's proposed *voir dire* questions did not constitute an unsustainable exercise of discretion. *See Goupil*, 154 N.H. at 221.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.