Hillsborough-southern judicial district
No. 2010-415

## THE STATE OF NEW HAMPSHIRE

### v.

### JASON WILMOT

Argued: September 21, 2011
Opinion Issued: January 13, 2012

*Michael A. Delaney*, attorney general (*Rosemary Wiant*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Jason Wilmot, appeals his convictions, following a jury trial in Superior Court (*Lynn*, C.J.), on two counts of first-degree assault for recklessly causing serious bodily injury to a person under thirteen years of age. *See* RSA 631:1, I(d) (2007). He argues that the trial court erred in not setting aside the jury's verdict because the evidence could not have supported a conclusion by the jury that his statements to police were voluntary and without those statements the evidence was insufficient to support the jury's verdict. We affirm.

The jury could have found the following facts. The victim was between two and three months old when his ribs and skull were fractured and he was shaken, which caused his brain to bleed. When the baby suffered these injuries, the defendant lived with the baby and the baby's mother.

On December 27, 2007, the defendant was alone with the baby in the morning. When the baby's mother next saw him, he was "all white and crying, gasping for air." The baby's mother took him to the hospital where he stayed overnight, with the diagnosis of a cold.

Twelve days later, after being alone with the baby in the afternoon, the defendant told the baby's mother that he was "doing that limp thing again . . . . But he's fine. He's breathing." The baby slept until later that evening. When the baby's mother and a visiting guest heard the baby crying, both offered to check on him, but the defendant refused. The defendant turned off the baby monitor, went to the baby's room alone and was gone for fifteen minutes.

At some point, the baby "cried a cry" his mother had "never heard." The mother asked the defendant if "everything [was] okay," and the defendant said, "yes, everything's fine." The baby was, in fact, "very pale," "very limp," gasping for air and nonresponsive. He also had a bruise under his eye. The baby's mother brought him to the hospital again, and this time, doctors concluded that he was seriously injured.

The next day, as part of their investigation into the baby's injuries, police detectives videotaped two interviews with the defendant. In the first interview, the defendant told the detectives that, on the day before the interview, he had "picked [the baby] up too hard in the ribs." He then checked the baby for bruises and, finding none, decided that the baby was fine. The defendant said that he "felt horrible" about mishandling the baby, but did not tell the baby's mother immediately because he feared that she would leave him.

The detectives encouraged the defendant to reveal more about the incident, telling him, "If we can see there's a problem but there's some solutions to fix the problem, that's much better than getting people in trouble and breaking up a family." They said, "Sometimes when we do this, these thing[s] end very horribly. . . . [The baby] looks like he's gonna be fine." At one point, the defendant told the detectives that, when picking the baby up, he "might have shooken [sic] him a little bit," but throughout the interview, he maintained that he had only shaken the baby on the day of the second hospital visit. The interview lasted less than three hours, and when it ended, the police brought the defendant to a friend's home.

At approximately ten o'clock that night, the defendant drove to the police station for a second interview, which lasted less than an hour. Before the interview began, the defendant orally waived his *Miranda* rights and

signed a waiver form. *See Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966). The detectives then pressed the defendant to admit to other abusive episodes. One said:

> You are the only one that did this. We are 100 percent sure of it now, 100 percent sure of it. Both times this baby is fine, things are going good, all of a sudden out of the blue, he's not breathing right, he's lethargic, his arms are going every which way, his eyes are kicking out to the side. Who finds him that way both times? You. . . . We're trying to meet you halfway . . . . But . . . I'll tell ya, from this point on, I'm not buying it. You tell us what you did and tell us the truth. . . . And nothing would make us happier than when this is all said and done, and we find out the whole truth from you, and we find out that this will never happen again, that's our greatest hope[], to put your family back together the way it should be.

The defendant admitted that he had also shaken the baby on the morning of the first hospital visit. He told police that the first event was "[n]ot as hard" as the second, and that during the second episode he "shook [the baby] once, but his head went . . . back, forward and then a little bit back." After the second interview, the defendant was arrested and charged with first degree assault.

At trial, the court denied two motions for directed verdict, and the jury found the defendant guilty of recklessly injuring the baby. The defendant then moved to set aside the jury's verdict, arguing that his statements to police were involuntary. The trial court denied the motion. The defendant now appeals the denial of his motions.

## I. Voluntariness of the Defendant's Statements to Police

Relying upon both the State and Federal Constitutions, the defendant contends his statements to police were involuntary. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. We first consider his arguments under the State Constitution, using federal cases only to aid in our analysis. *State v. Ball,* 124 N.H. 226, 231-33 (1983).

■ Under Part I, Article 15 of the New Hampshire Constitution, for a defendant's statement to be admissible at trial, the State must prove beyond a reasonable doubt that it was voluntary. *State v. Parker,* 160 N.H. 203, 207-08 (2010). Normally, whether a statement is voluntary is a question of fact for the trial court, which we will not reverse unless the manifest weight of the evidence, viewed in the light most favorable to the State, is to the contrary. *See id.* Here, because the defendant never objected to the

introduction of his statements until after the jury verdict, the trial court had no occasion to make a finding of voluntariness.

Nonetheless, the trial court instructed the jury that it should disregard the defendant's statements unless it found beyond a reasonable doubt that he spoke voluntarily. The defendant contends that the jury should have disregarded his statements to police because there was insufficient evidence of their voluntariness and that, without the statements, the evidence was insufficient to convict him.

The State argues that on review we should employ the same "manifest weight of the evidence" standard as we would if the trial court had found the statements to be voluntary. The defendant argues that we should review the evidence of voluntariness as we would a sufficiency of the evidence challenge to the jury's verdict.

■ We assume without deciding that the sufficiency standard that the defendant requests is the correct standard to apply. Under this standard, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found his statements to be voluntary beyond a reasonable doubt. *See State v. Evans*, 150 N.H. 416, 424 (2003).

■ "In determining whether a [statement] is voluntary, we look at whether the actions of an individual are the product of an essentially free and unconstrained choice or are the product of a will overborne by police tactics." *State v. Rezk*, 150 N.H. 483, 487 (2004) (quotation omitted). To make this determination, we consider all of the surrounding circumstances, including the characteristics of the accused and the details of the interrogation. *Id.* at 487-88 (listing factors to consider when determining voluntariness).

The defendant argues that his statements were involuntary because of the totality of the circumstances surrounding the two interviews. Specifically, he argues that his statements were coerced because he was not given *Miranda* warnings before his first interview, he was inexperienced with the police, he is dyslexic, he was tired and hungry during the first interview, the police employed tactics such as minimizing the baby's injuries and the likely consequences of the defendant's admissions, and, during the first interview, the police threatened to arrest him if he left.

■ Here, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that a rational juror could have found beyond a reasonable doubt that the defendant's statements were made voluntarily. The defendant was not under arrest when he was interviewed and, during each interview, specifically stated that he was

participating freely and voluntarily. He was also advised that he could end the interviews at any time. Even so, he chose to continue. Although he argues that he was coerced during the first interview, he drove himself to the second interview approximately seven hours later. The videotaped interviews contain no evidence of threats, violence or coercion of any kind. Moreover, neither interview was oppressive or inordinately long; the first was less than three hours and the second less than an hour. *See State v. Chapman*, 135 N.H. 390, 401 (1992) (two-and-a-half-hour interview was not oppressive or inordinately long).

Although the defendant lacked experience with the police and his mother testified that he was dyslexic, there was evidence that he received "very good" grades and graduated from high school. The defendant's lack of experience and possible dyslexia did not compel a jury finding that his statements were involuntary. *Cf. State v. Bilodeau*, 159 N.H. 759, 761, 763 (2010) (holding mental illness does not render a confession involuntary as a matter of law).

■ Moreover, "[a]lthough the detectives admittedly used minimization techniques and were 'friendly' to the defendant, the police are not prohibited from misleading a suspect, and friendly police conduct does not alter the voluntariness of a defendant's statements." *State v. Hernandez*, 162 N.H. 698, 706 (2011). To the extent the defendant argues these tactics "impliedly promised" him lenient treatment, we conclude that a juror rationally could have viewed them as exhortations to be truthful and cooperate that failed to render his statements involuntary. *Compare Rezk*, 150 N.H. at 489-90, *with State v. Carroll*, 138 N.H. 687, 692 (1994).

While the defendant claims that the police threatened to charge him with resisting arrest if he left the first interview, the evidence was conflicting. The defendant testified that he requested to leave and was so threatened; a detective testified that the defendant made no such request and could have left at any time. Based upon this conflicting evidence, a rational juror was not compelled to find that a threat was made. *See State v. Oakes*, 161 N.H. 270, 276 (2010).

■ We are also not persuaded by the defendant's assertion that the failure of the police to administer *Miranda* warnings before his first interview rendered his statements involuntary. The defendant does not argue that such warnings were required, and "[t]he failure of the police to do something that was not required cannot be grounds [for] render[ing] the defendant's confession involuntary." *State v. Hammond*, 144 N.H. 401, 406 (1999).

In sum, viewing the evidence and all reasonable inferences from it in the light most favorable to the State, a rational juror could have concluded

beyond a reasonable doubt that the defendant's statements were voluntary. Because the State Constitution affords at least as much protection as the Federal Constitution under these circumstances, *see Hernandez*, 162 N.H. at 707, we reach the same result under the Federal Constitution.

*II. Sufficiency of the Evidence*

The defendant next argues that, even including his statements, the evidence was insufficient because the State failed to exclude the rational conclusion that the baby's mother or some other caregiver injured the baby and failed to prove that, if he did injure the baby, he did so recklessly. We disagree.

■ To prevail, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *Evans*, 150 N.H. at 424. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. *Id.* Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. *Id.*

We first address the defendant's argument that the evidence against him was insufficient because it failed to exclude the rational conclusion that another caregiver injured the baby. Two factually similar cases, *Evans*, 150 N.H. at 424-26, and *State v. Fandozzi*, 159 N.H. 773, 782 (2010), are instructive.

In *Evans*, the defendant was accused of killing a toddler and argued that the circumstantial evidence was insufficient to convict him, in part, because, when the toddler died, she was with a babysitter. The jury heard evidence that: (1) the defendant physically abused the child so frequently that the child's mother had to fabricate stories to explain the child's injuries; (2) medical evidence contradicted the defendant's explanation of the child's most serious injuries; (3) the child developed bruises and was rendered unconscious while in the defendant's care the night before she died; and (4) the child's mother had said the defendant killed the child. *Id.* at 425-26. By contrast, the only evidence that the babysitter harmed the child was that she was in the sitter's care when she died and that her pajama bottoms had been removed. *Id.* at 426. We held that the evidence, viewed in the light most favorable to the State, was sufficient for a rational juror to exclude all conclusions other than the defendant's guilt. *See id.*

Similarly, in *Fandozzi*, 159 N.H. at 782, the defendant was accused of breaking his infant son's ribs and argued that because the medical timeline included a period during which the infant was in Connecticut, the State

failed to prove that he inflicted the child's injuries in New Hampshire. *Fandozzi*, 159 N.H. at 782. We held that testimony from the baby's Connecticut caregivers that he was not hurt while in their care permitted the jury to conclude beyond a reasonable doubt that the defendant injured the baby in New Hampshire. *Id.*

■ In this case, as in *Evans*, a rational juror, viewing the evidence and reasonable inferences from it in the light most favorable to the State, could have found beyond a reasonable doubt that the defendant, not another caretaker, injured the baby. *See Evans*, 150 N.H. at 424-26. On the two occasions when the baby exhibited symptoms of abuse, he was with the defendant immediately beforehand. When the baby was seriously injured, the defendant said that the baby was fine and moments later produced him bruised, pale, limp and nonresponsive. Later the defendant told police that he did not immediately seek help for the baby because he feared there would be repercussions for his behavior.

There was no evidence that any of the infant's other caregivers mistreated him, and, as in *Fandozzi*, the caregivers' testimony provided evidence to the contrary. *Fandozzi*, 159 N.H. at 782. The baby's mother, grandmother and babysitters all testified that he was not injured while in their care. Drawing all inferences in the State's favor, a rational juror could conclude beyond a reasonable doubt that the defendant — who admitted to mishandling the baby, was alone with him when the abuse occurred and attempted to conceal the baby's symptoms — caused the injuries.

Moreover, a rational juror could have concluded that the defendant's admissions were consistent with medical evidence about the baby's injuries. The defendant admitted to police that on the days of the hospital visits he "picked [the baby] up too hard in the ribs" and shook him. A doctor testified that the baby "was either squeezed or had pressure applied to his chest that was completely out of the range of the way a reasonable caretaker would handle a baby" and had been subjected to "violent shaking." In addition, a juror could have found that even the defendant's more circumscribed descriptions of abuse effectively corroborated the other circumstantial evidence against him.

■ Viewing all of the evidence in the light most favorable to the State, there was also sufficient evidence for a rational juror to find that the defendant acted recklessly. To prove that the defendant injured the baby recklessly, the State had to show beyond a reasonable doubt that he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" that his actions would cause serious bodily injury to the baby. RSA

626:2, II(c) (2007); RSA 631:1, I(d). The jury is entitled to infer the requisite intent from the defendant's conduct in light of all the circumstances. *State v. Tayag*, 159 N.H. 21, 24 (2009).

The defendant acknowledged that he knew "kids['] . . . bones are brittle" and that he "felt horrible" about how he had handled the baby; a medical expert testified that the baby's injuries were inflicted by "violent shaking" and squeezing "completely out of [a reasonable] range." Based upon this evidence, a rational juror could have found beyond a reasonable doubt that the defendant was aware of and consciously disregarded the risk that violently handling the baby could cause serious bodily injury.

The defendant also argues that the questionable voluntariness of his statements rendered the jury's verdict against the weight of the evidence. *See State v. Spinale*, 156 N.H. 456, 465 (2007) (distinguishing between weight and sufficiency of the evidence challenges). Because he never raised this issue at trial or in his notice of appeal, we do not consider it. *See Oakes*, 161 N.H. at 284-85.

*Affirmed.*

DUGGAN, HICKS and CONBOY, JJ., concurred.