NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2012-758


THE STATE OF NEW HAMPSHIRE

v.

LISA COLLYNS

Argued: January 23, 2014
Opinion Issued: July 16, 2014


Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.


David M. Rothstein, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J. Following a jury trial in Superior Court (Houran, J.), the defendant, Lisa Collyns, was convicted of theft by deception, see RSA 637:4 (2007), and attempted theft by unauthorized taking, see RSA 629:1 (2007); RSA 637:3 (2007). Although the defendant appealed the trial court's denial of her motion to dismiss or to set aside the verdicts as to both convictions, at oral argument she withdrew her appeal of the theft by deception conviction. Because there was insufficient evidence to prove that the defendant attempted to obtain the "property of another," RSA 637:3, I, we reverse the attempted theft by unauthorized taking conviction and remand.

The jury could have found the following facts. On July 30, 2010, the victim entered into a purchase and sale agreement to sell her restaurant to the defendant. Because the restaurant was located in a building owned by a third party, the transaction did not include the sale of real property. Under this agreement, if the defendant failed to pay the full purchase price by September 1, 2010, ownership of the restaurant would "remain with" the victim.

On September 11, 2010, after the defendant failed to pay the balance due for the restaurant, the parties renegotiated their contract and entered into a second purchase and sale agreement (second agreement). This agreement stated, in relevant part:

> I [the defendant] agree to pay each and every month the sum of $500.00 until the balance of the $19500.00 is satisfied.

> I [the defendant] agree to maintain the equipment located there in good running condition at my own expense.

> I [the defendant] also agree to pay all bills pertaining to the business being [l]ights, phone, food, heat, (propane) taxes, along with rent to the owner of the building.

> I [the defendant] agree that ownership of the equipment will belong to [the victim] until the balance of the $19500.00 is paid in full. I also agree that if I default at any time on my monthly payments the business ownership will revert back to [the victim].

The defendant made the monthly payments required under the second agreement through January 2011. In December 2010, the landlord of the building in which the restaurant was located served the defendant with a demand for rent and an eviction notice. At the defendant's request, a friend posted an advertisement listing restaurant equipment for sale. A potential buyer responded to the advertisement and met the defendant and her friend at the restaurant. They discussed which items were for sale, and the defendant's friend informed the buyer that some of the equipment was stored offsite. The buyer paid for the equipment, and the defendant's friend provided the buyer with a receipt signed by the defendant. The buyer was told that he could collect the equipment from the restaurant later that day. When the buyer returned, the defendant unlocked the restaurant and left shortly thereafter. While the buyer was preparing to remove the equipment, the landlord came to the restaurant. The landlord called the police, and the buyer left the property without taking the equipment.

2

The defendant was charged with one count of attempted theft by unauthorized taking, which alleged, in relevant part, that the defendant attempted to exercise "unauthorized control over restaurant equipment which was the property of [the victim], in that, she purposely advertised the restaurant equipment for sale." See RSA 629:1; RSA 637:3. The defendant was also charged with one count of theft by deception relating to "restaurant equipment from the . . . Restaurant," which the trial court ruled could include property belonging to the landlord. See RSA 637:4.

At the close of the State's case, the defendant moved to dismiss the charges, arguing, with respect to the attempted theft by unauthorized taking charge, that she could not have attempted to steal the property of another because the second agreement constituted a conditional sales contract and the victim had only a security interest in the equipment. The trial court denied the defendant's motion.

The jury returned guilty verdicts on both counts. The defendant submitted a motion to dismiss or set aside the verdicts asserting that the evidence was insufficient and that the verdicts were against the weight of the evidence. The trial court denied the motion, focusing on "the express terms of the parties['] contracts" and concluding that there was sufficient evidence upon which a reasonable juror could find that the defendant attempted to obtain or exercise control over the property of another. The trial court also found that the evidence did not "preponderate[] heavily against the verdicts" so as to require the verdicts to be set aside as against the weight of the evidence.

On appeal, the defendant argues that the trial court erred when it denied her motion to dismiss the charge of attempted theft by unauthorized taking "because the restaurant equipment was not, as a matter of law, the 'property of another' under RSA 637:2, IV." See RSA 637:2, IV (2007). We agree.

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Kay, 162 N.H. 237, 243 (2011). "To prevail upon [her] challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt." State v. Fandozzi, 159 N.H. 773, 782 (2010) (quotation omitted).

Pursuant to RSA 637:3, I, a person is guilty of the crime of attempted theft by unauthorized taking "if [she attempts to] obtain[] or exercise[] unauthorized control over the property of another with a purpose to deprive him thereof." Thus, the State was required to prove that the defendant (1) attempted to obtain or exercise unauthorized control over (2) the property of

3

another (3) with the purpose to deprive the other of the property.  See RSA 629:1; RSA 637:3; see also State v. Gagne, 165 N.H. 363, 368 (2013).

RSA 637:2, IV defines the term "[p]roperty of another," in relevant part, as "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property."  Nonetheless, "[p]roperty in possession of the actor shall not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement."  RSA 637:2, IV.

The defendant argues that the State failed to prove the requirements of attempted theft by unauthorized taking because, under the second agreement, the victim had only a security interest in the equipment and, therefore, the equipment was not the "property of another" as defined by the statute.  The State disagrees, asserting that the equipment at issue constitutes "property of another" within the meaning of the theft statute because the victim "retained more than a security interest in the equipment" in that "she was its rightful owner."

Resolution of this issue requires us to construe the relevant language of RSA 637:2, IV.  "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole."  State v. Zubhuza, 166 N.H. ___, ___, 90 A.3d 614, 618 (2014) (quotation omitted).  "We construe provisions of the Criminal Code according to the fair import of their terms and to promote justice."  Id. (quotation omitted); see RSA 625:3 (2007).  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Zubhuza, 166 N.H. at ___, 90 A.3d at 618 (quotation omitted).  "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id. (quotation omitted).  "We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words."  Id. (quotation omitted).  "Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation."  Id. (quotation omitted).

RSA 637:2, IV exempts from the definition of "[p]roperty of another" "[p]roperty in possession of the actor" when the other "has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement."  (Emphases added.)  A "security interest" is defined as "[a] property interest created by agreement or by operation of law to secure performance of an obligation (esp[ecially] repayment of a debt)."  Black's Law Dictionary 1478 (9th ed. 2009).  A "security agreement" is defined as "[a]n agreement that creates or provides for an

4

interest in specified real or personal property to guarantee the performance of an obligation." Id. Therefore, by its plain meaning, the statute exempts from the definition of "property of another" property that is in the possession of an individual pursuant to an agreement that creates a property interest in the other person to secure the performance of an obligation.

This interpretation is supported by the commentary to the Model Penal Code, which we may look to when interpreting analogous New Hampshire statutes because our Criminal Code is largely derived from the Model Penal Code. See State v. Donohue, 150 N.H. 180, 183 (2003). The commentary explains that the effect of the language used in RSA 637:2, IV "is to exclude from the theft provisions . . . efforts by debtors or conditional vendees to dispose of personal or movable property subject to a security interest in ways that prejudice the secured creditor." Model Penal Code § 224.10 cmt. 1, at 343 (Official Draft and Revised Comments 1980) (explaining background for misdemeanor crime of defrauding secured creditors); see State v. Marion, 122 N.H. 20, 23 (1982). Rather, such efforts by debtors or conditional vendees are punishable under RSA 638:9 (2007), which establishes misdemeanor sanctions for the fraudulent disposition of security interests. See Model Penal Code § 224.10 cmt. 1, at 343.

In order to determine whether the defendant and the victim entered into a security agreement giving the victim a security interest, we look to the language of the agreement. "The interpretation of a contract is a question of law, which we review de novo." In the Matter of Liquidation of Home Ins. Co., 166 N.H. ___, ___, 89 A.3d 165, 170 (2014) (quotation omitted). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Id. (quotation omitted). "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the contract." Id. (quotation omitted). We "judge the intent of the parties by objective criteria rather than the unmanifested states of mind of the parties." Lake v. Sullivan, 145 N.H. 713, 715 (2001) (quotation omitted).

The State argues that "the issue of the ownership of the property, and the terms of the contract, were in dispute," and, therefore, "the matter was properly decided by the jury." We disagree. Under the terms of the second agreement, the defendant agreed that "ownership of the equipment will belong to [the victim] until the balance . . . is paid in full." Notwithstanding the "ownership" language, however, the import of the entire agreement was to vest the victim with an interest in the equipment only until the defendant paid the remaining balance due for the restaurant — a security interest. See State v. Schmidt, 957 A.2d 80, 87 (Me. 2008) (vacating theft by unauthorized taking or transfer convictions because victims — unpaid subcontractors and suppliers —

5

"had only a right to repayment that could afford them a security interest in the form of a mechanic's lien on the property"); Sommers v. Sommers, 143 N.H. 686, 692 (1999) (finding language of stipulation in divorce decree awarding automobile to defendant but conditioning transfer of title on defendant's payment of debt and taxes provided defendant with a vested property interest and plaintiff with a security interest); Cutting v. Whittemore, 72 N.H. 107, 110 (1903) (explaining that "a vendor who sells a chattel, reserving the title until the purchase price is paid, retains the general property therein, not as the absolute owner, but as collateral security . . . . The reservation of the title is but as security for the purchase price."); cf. State v. Podzimek, 779 N.W.2d 407, 410 (S.D. 2010) (concluding defendant did not obtain property of another by "disposing of, concealing or removing certain motor vehicles that were the subject of a promissory note and chattel mortgage" (quotation omitted)); ACG Credit Co. v. Gill, 152 N.H. 260, 263 (2005) (concluding transaction did not create security interest because there was no underlying obligation).

Because the equipment was in the defendant's possession and the victim had only a security interest in the equipment, the evidence was insufficient, as a matter of law, to establish that the defendant attempted to take the "property of another" within the meaning of RSA 637:2, IV. Accordingly, we reverse the defendant's conviction for attempted theft by unauthorized taking and remand.

Conviction for attempted theft by unauthorized taking reversed; and remanded.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

6