NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2014-0299

THE STATE OF NEW HAMPSHIRE

v.

JASON CZEKALSKI

Argued: February 16, 2017
Opinion Issued: April 11, 2017

Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

Jason Czekalski, the defendant, filed a supplemental brief with permission of the court.

DALIANIS, C.J. The defendant, Jason Czekalski, appeals his convictions on two counts of aggravated felonious sexual assault (AFSA), see RSA 632-A:2, I(l) (1996) (amended 2003), II (1996) (amended 1999), and one count of pattern AFSA, see RSA 632-A:2, III (2016), following a jury trial in Superior Court

(Kissinger, J.).  On appeal, he argues that the trial court erred by denying his motion to suppress evidence related to a January 2013 telephone call between the defendant and the victim, recorded by the police with the victim's consent. See RSA 570-A:6 (2001), :7 (Supp. 2014) (amended 2015), :9, IX (2001).  He asserts that suppression was warranted because the recording was not "done in such way as [would] protect the recording from editing or other alterations." RSA 570-A:9, VII(a) (2001); see RSA 570-A:6 (providing that "[w]henever any telecommunication or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter").

In his supplemental brief filed with court permission, the defendant argues that the trial court also erred when it denied his motion to continue the trial.  The defendant further argues, under our plain error rule, see Sup. Ct. R. 16-A, that the trial court should have dismissed two of his indictments because they were defective and the trial court erred when it allowed a juror to be seated who allegedly failed to complete a juror questionnaire.  We affirm.

I.  Recorded Telephone Call

A.  Relevant Facts

In January 2013, the State Police recorded a telephone conversation between the defendant and the adult victim.  Before doing so, the police obtained authorization from the Office of the New Hampshire Attorney General to record the call.  The police recorded the call pursuant to that authorization and with the victim's consent.

In the recorded call, the defendant and the victim discussed his conduct when the victim was a child.  The victim told the defendant that she had begun to see a counselor to talk about "[w]hat [the defendant] did to [the victim] when [she] was growing up."  During the conversation, the defendant admitted that, when the victim was a child, he once digitally penetrated her, twice touched her "privates," and touched her breasts.  The defendant told the victim that he did not know why he engaged in this conduct.  He said, "I still can't come up with any kind of explanation that makes sense . . . [o]ther [than] I was weak and I let evil rule me till I found a counselor who would do things anonymously so he did not have to report me."  The defendant told the victim that he was "so sorry."

Thereafter, the defendant was arrested.  In his subsequent police interview, the defendant admitted that he once digitally penetrated the victim, touched her pubic hair, partially removed her underwear, and "probably" touched her breasts "probably . . . in the same time period" during which he partially removed her underwear.

2

A Cheshire County grand jury indicted the defendant on several charges, including: (1) a charge alleging that he had committed AFSA when he purposely penetrated the victim digitally when she was younger than 13 years old; (2) a charge alleging that he had committed AFSA when he intentionally touched the victim's genitalia without penetration when she was younger than 13 years old; and (3) a charge alleging that the defendant had engaged in a pattern of AFSA when he touched the victim's breasts on more than one occasion in 1995, when she was younger than 13 years old, "under circumstances that can reasonably be construed as being for purposes of sexual arousal or gratification." See RSA 632-A:2, I(l), II, III.

Before trial, the defendant moved to suppress evidence from the recorded telephone call and "any evidence obtained as fruit of the poisonous tree" on the ground that the recording was not "done in such way as will protect [it] from editing or other alterations." RSA 570-A:9, VII(a). The State objected to the motion, arguing that the statutory language upon which the defendant relied did not apply to the recorded communication in this case. The trial court agreed with the State.

At trial, the victim, who was born in 1983, testified that the defendant "molested [her] while [she] was growing up," including when she was 11 and 12 years old. The victim testified that, when she was asleep, the defendant "would come into [her] room and would remove parts of [her] clothing and he would rub [her] breasts and [her] vagina, and he stuck his fingers inside of [her] sometimes." The victim testified that "every time he was done[,] he would whisper into [her] ear, 'It was just a dream, just a sweet, sweet dream,' and then he would leave the room." The victim testified that she "would pretend that [she] was sleeping because [she] was so scared." The victim estimated that the defendant molested her "probably around ten times." She testified that the defendant last molested her when her mother was in the hospital giving birth to her brother.

The victim was questioned about the recorded telephone call during both direct and cross-examination. She reviewed a transcript of the call and agreed that all of the defendant's statements shown in the transcript were "consistent with the things that he said" during the call. The recording of the call was then played for the jury and the transcript of the call was published to the jury.

The State Police detective who listened to the telephone call between the victim and the defendant was also questioned about it. He explained that "a cell phone was utilized" to make the call "and a simple digital recorder with an ear piece" was used to record it. He testified that "when somebody places [the] phone call, they have an ear piece . . . that picks up both whoever's making the call and [to whom] they're making the call." In addition, the detective wore "a set of earphones," so that he could "actually listen to the phone conversation while it's taking place." The detective testified that he heard "everything that

3

[the victim] said" as well as "what was said on the other end of the call" by the defendant.

After the State rested, the defendant chose to testify.  He, too, was questioned about the recorded telephone call.  He confirmed certain of the statements that he made during the call, although he also testified that his memories of his conversation with the victim were "vague."

On direct and cross-examination, the defendant explained, rather than refuted, the statements he made during the recorded call.  For instance, he told the jury that when he was answering the victim's questions during the telephone call, he believed that her questions concerned how he handled an alleged incident between the victim and her brother.  He also testified that, during the call, he "was forced into a position of having to agree with what [the victim] said" because, he explained, "when [the victim] gets upset, . . . you cannot argue with her, you have to agree with what she's saying until she calms down."  Additionally, he testified that he was intoxicated during the telephone call.  The defendant did not testify that either the recording or the transcript of the recording was inaccurate.

B.  Discussion

On appeal, the defendant argues that the trial court erred when it ruled that the statutory requirement that a recording "be done in such way as will protect [it] from editing or other alterations," RSA 570-A:9, VII(a), did not apply to the recorded communication at issue.  To resolve this issue, we must engage in statutory interpretation, which presents a question of law.  State v. Washington, 168 N.H. 689, 692 (2016).  In doing so, we review the trial court's statutory interpretation de novo.  See id.

In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole.  State v. MacMillan, 152 N.H. 67, 70 (2005).  We first examine the language found in the statute and ascribe the plain and ordinary meanings to the words used.  Id.  If the statute's language is clear and unambiguous, we do not look beyond it to discern legislative intent.  Id.  Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation.  Id.  Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme.  Id.

The New Hampshire Wiretapping and Eavesdropping statute, RSA chapter 570-A, makes it unlawful for a person to "[w]ilfully intercept[ ] . . . any telecommunication or oral communication" except as specifically provided in RSA chapter 570-A "or without the consent of all parties to the communication."  RSA 570-A:2, I(a) (2001).  However, "RSA chapter 570-A

4

allows the police, when investigating [statutorily-]enumerated activities, to intercept communications without judicial authorization when a police officer is a party to the communication or a party to the communication consents to the interception," State v. Kilgus, 128 N.H. 577, 589 (1986), and the police have obtained prior authorization for the interception from the attorney general's office, see RSA 570-A:2, II(d). In all other circumstances, "the police must obtain judicial authorization" before intercepting communications. Kilgus, 128 N.H. at 589.

RSA 570-A:2, II(d) sets forth the conditions under which the police may intercept communications without a court order. Under RSA 570-A:2, II(d), the police must: (1) be investigating an offense that is enumerated in RSA chapter 570-A; (2) be a party to the communication or have obtained the prior consent of a party to it; and (3) have obtained authorization for the interception from the attorney general or his designee. See RSA 570-A:2, II(d). In the instant case, there is no dispute that those conditions were met: (1) AFSA is one of the offenses enumerated in RSA chapter 570-A, see RSA 570-A:7; (2) the police obtained the victim's prior consent to the interception; and (3) the attorney general or his designee authorized the interception. See State v. Kepple, 151 N.H. 661, 665 (2005) (discussing a one-party intercept of a conversation between the victim and the defendant to investigate the crime of AFSA).

RSA 570-A:9 (2001) "sets forth the procedures for applying for a court order approving the interception of a telecommunication or oral communication." MacMillan, 152 N.H. at 73. The defendant bases his argument on the first two sentences of subparagraph VII(a) of RSA 570-A:9, which provide:

> The contents of any telecommunication or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any telecommunication or oral communication under this paragraph shall be done in such way as will protect the recording from editing or other alterations.

RSA 570-A:9, VII(a) (emphases added). The defendant asserts that, when those two sentences are read together, it is clear that the requirement that a recording "be done in such way as will protect [it] from editing or other alterations" applies to all interceptions allowed under RSA chapter 570-A, not just to court-ordered interceptions. Id. We disagree.

The sentence upon which the defendant relies does not apply to interceptions allowed by RSA 570-A:2, II(d). The second sentence of subparagraph VII(a) applies only to recordings made under "this paragraph,"

5

meaning paragraph 9 of RSA chapter 570-A. Id. By its plain terms, the second sentence does not apply to recordings made pursuant to RSA 570-A:2, II(d).

Moreover, while the first sentence of RSA 570-A:9, VII(a) discusses communications "intercepted by any means authorized by this chapter," the second sentence discusses only communications recorded "under this paragraph." Id. (emphases added). When interpreting a statute, "[w]e must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words." State v. Burke, 162 N.H. 459, 461 (2011). Thus, we must presume that the legislature intended the words "chapter" and "paragraph" to have different meanings. In context, the word "chapter" refers to RSA chapter 570-A and the word "paragraph" refers to paragraph 9 of RSA chapter 570-A. Accordingly, assuming without deciding that the first sentence applies to the communication at issue because it was intercepted by a means "authorized by this chapter," we, nonetheless, conclude that the second sentence does not apply because the communication was not recorded "under this paragraph." RSA 570-A:9, VII(a).

II. Arguments in the Defendant's Supplemental Brief

A. Motion to Continue

The defendant argues that the trial court erred by denying the motion to continue that he filed on the first day of trial. In that motion, the defendant argued that he had been transferred from the Cheshire County House of Corrections in Keene to the New Hampshire State Prison in Concord approximately two weeks earlier. He contended that he had "not been provided with paper, pens, or his legal files," while at the prison in Concord, which "made it impossible for him to assist counsel in his own defense." He argued that "[d]epriving [him] of access to his legal file[s], especially on the eve of trial" impaired his ability to assist counsel. He further argued that removing him from Keene to Concord "without advising [him], or his counsel, essentially deprive[d] him [of] access to counsel." Accordingly, the defendant asked the court to continue the trial.

The trial court denied the defendant's motion, stating: "The matter has been pending for some time. It was continued once already. And critical to [the court's] determination was the statement by [defense counsel] that he was prepared to go forward with the trial." Nevertheless, the court stated that it "would make whatever accommodations are reasonably necessary" to facilitate communications between the defendant and his counsel "during the course of the trial." The court told defense counsel: "[T]o the extent you want time or [the defendant] needs additional time to speak with you, just let me know and we'll make any and all reasonable accommodations for that." The court also stated that it would "make sure that throughout the course of proceedings that

6

that additional time is provided so that [defense counsel] can confer with [the defendant]."

The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court. State v. Addison, 160 N.H. 792, 795 (2010). We will not overturn that decision unless it constitutes an unsustainable exercise of discretion. Id.

On appeal, the defendant focuses upon the alleged illegality of his transfer from the county jail in Keene to the state prison in Concord. He asserts that the transfer was orchestrated by the prosecutor in retaliation for his having sued Cheshire County, and, thus, constituted prosecutorial overreaching. He also argues that the transfer interfered with his rights to counsel and to participate meaningfully in his own defense. Moreover, he asserts, for the first time, that the transfer denied him access to medications that "could, even theoretically, interfer[e] with [his] right to participate in his own defense."

The issue before us, however, is not whether the transfer was unlawful. It is whether the trial court unsustainably exercised its discretion when it denied the defendant's motion for a continuance. As the defendant's appellate arguments do not address that issue, he has failed to persuade us that the trial court's decision constituted an unsustainable exercise of discretion.

### B. Indictments

In his supplemental brief, the defendant challenges one of his AFSA indictments and an indictment for felonious sexual assault (FSA) under our plain error rule, see Sup. Ct. R. 16-A. In response to the defendant's post-conviction motion for a new trial, the trial court vacated the defendant's conviction on the FSA charge. Accordingly, we confine our review to the defendant's challenges to the AFSA indictment.

The AFSA indictment at issue alleged that the defendant "intentionally touched (without penetration) — directly, through clothing or otherwise — the genitalia of [the victim] . . . a person under the age of 13, under circumstances that can be reasonably construed as being for purposes of sexual arousal or gratification." The defendant argues that this indictment violated the Ex Post Facto Clauses of the State and Federal Constitutions, see N.H. CONST. pt. I, art. 23; see also U.S. CONST. art. I, § 9, cl. 3, § 10, cl. 1, because it contained the phrase "directly, through clothing or otherwise," which was not added to the pertinent statute until 1999, after the alleged offense occurred. Compare RSA 632-A:2, II (a person is guilty of AFSA without penetration when he "intentionally touches the genitalia of a person under the age of 13"), with RSA 632-A:2, II (2016) (a person is guilty of AFSA without penetration when he "intentionally touches whether directly, through clothing, or otherwise the

7

genitalia of a person under the age of 13"). He asserts that, because the language in the indictment did not reflect the language of the statute in effect at the time of the alleged offense, the trial court erred by failing to dismiss the indictment.

Plain error should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. State v. Pennock, 168 N.H. 294, 310 (2015). To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. Here, we cannot conclude that the trial court erred.

We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). Part I, Article 23 of the New Hampshire Constitution forbids ex post facto penal laws: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made . . . for . . . the punishment of offenses." A law or application of a law is ex post facto if it "makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; or aggravates a crime, and makes it greater, than it was when committed; or changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed." State v. Matthews, 157 N.H. 415, 418 (2008) (quotation omitted).

The defendant premises his ex post facto argument upon the assumption that, before RSA 632-A:2, II was amended in 1999, a person did not commit AFSA by intentionally touching the genitalia of a person younger than 13 years old through clothing. That assumption is incorrect. In fact, the pre-1999 version of RSA 632-A:2, II did criminalize the intentional touching of the genitalia of a person younger than 13 years old through clothing. See State v. Dixon, 144 N.H. 273, 283-84 (1999), abrogated on other grounds by State v. Quintero, 162 N.H. 526 (2011). In Dixon, we determined that the reference in the pre-1999 version of RSA 632-A:2, II to "intentional touching" was "not limited to skin-to-skin touching" and included the "touching of genitalia over clothes." Id. at 283, 284.

Thus, contrary to the defendant's assertions, by including the phrase "directly, through clothing or otherwise," the AFSA indictment did not criminalize conduct that was innocent at the time of the alleged offense, and, therefore, did not violate the State Ex Post Facto Clause. See Matthews, 157 N.H. at 418. Because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution. See Doe v. State of N.H., 167 N.H. 382, 396 (2015) (observing that "[t]he protection afforded against ex post facto penal laws under both

8

article I, section 10 of the Federal Constitution and part I, article 23 of the New Hampshire Constitution is the same" (quotation omitted)).

### C. Juror Issue

The defendant alleges that one of the jurors who sat on his trial was seated without having completed a juror questionnaire. He contends that, by seating the juror, the trial court violated RSA 500-A:7, I (Supp. 2016), which provides:

> I. Any prospective juror who does not submit a completed juror qualification form as instructed shall be directed by the clerk to appear at the court to complete the juror qualification form.

> II. At the time of his or her appearance for jury service, or at the time of any interview before the court or clerk, a prospective juror may be required to complete another juror qualification form in the presence of the court or clerk. The prospective juror may then be questioned, but only with regard to his or her responses to questions contained on the form and grounds for his or her excuse for disqualification. Any information acquired by the court or clerk at such time shall be noted on the juror qualification form.

The defendant raises this argument under our plain error rule. See Sup. Ct. R. 16-A. Because we conclude that the defendant has not demonstrated that any error occurred, we hold that the trial court did not commit plain error when it seated the juror in question.

In assessing alleged violations of the juror selection statute, we first determine whether the actions complained of constituted violations of the statutory jury selection procedures, see RSA ch. 500-A (2010 & Supp. 2016), and then consider whether any deviations from the statutory procedure, taken as a whole, resulted in substantial noncompliance with the statute. State v. Ayer, 150 N.H. 14, 33 (2003). "The burden of making a prima facie case for substantial noncompliance is on the defendant." Id. (quotation omitted). "In most cases the defendant must show the irregularities constituted such material departures from the statutory provisions as to prejudice his rights." Id. (quotation omitted).

The defendant has failed to establish that the juror in question was seated without having completed a juror questionnaire. Because the defendant did not raise this argument in the trial court and, therefore, the trial court made none of the pertinent factual findings, we may find that the juror was seated without having completed a juror questionnaire "only if a reasonable finder of fact could not [have found] differently as a matter of law." New Canaan Bank & Trust v. Pfeffer, 147 N.H. 121, 127 (2001); see State v. Sawyer,

9

145 N.H. 705, 706 (2001) (noting that "when a lower tribunal has not addressed a factual issue, but the record reveals that a reasonable fact finder necessarily would reach a certain conclusion, we may decide that issue as a matter of law" (quotation omitted)).

Based upon the record submitted for our review, we are unable to find, as a matter of law, that the juror in question failed to complete the questionnaire before she was seated. Thus, even if seating a juror who failed to complete a juror questionnaire were to constitute "substantial noncompliance" with the requisites of RSA 500-A:7, I, we cannot determine on the record before us that this occurred. Ayer, 150 N.H. at 33.

We have reviewed the defendant's remaining arguments in his supplemental brief and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.