# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0487, <u>State of New Hampshire v. Joshua Kandoll</u>, the court on March 26, 2025, issued the following order:**

The court has reviewed the record submitted on appeal, has considered the written and oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, Joshua Kandoll, appeals his convictions of one count of felonious sexual assault (FSA), RSA 632-A:3, III (amended 2024), and two counts of indecent exposure and lewdness, RSA 645:1, II(a) (amended 2024). On appeal, the defendant argues that the Trial Court (<u>Delker</u>, J.) erred in not granting his motion to continue the trial. He also maintains that his trial attorney's representation was deficient and he was denied his right to effective assistance of counsel. Lastly, the defendant seeks our review of certain confidential records of the victim to determine whether the trial court's <u>in</u> <u>camera</u> review of the records and its disclosure of a portion of them was error. We dismiss the defendant's ineffective assistance of counsel (IAC) claims without prejudice, and affirm his convictions.

The facts relevant to this appeal are as follows. In 2015, when the victim was two years old, she lived with her mother and the defendant in North Carolina. At that time, the victim had no contact or relationship with her biological father. At some point, the biological father requested a paternity test, which revealed that the victim was his daughter, and litigation commenced regarding his parental rights. Eventually, the circuit court in New Hampshire ordered the victim and her mother to return to this state in order to allow the biological father to exercise his parental rights. As a result, the victim, her mother, and the defendant moved to New Hampshire in 2016 and the victim began spending alternate weekends with her biological father.

During these visits, the biological father observed a change in the victim's behavior and, after the victim engaged in sexualized behavior, the biological father reported his concerns to the Division for Children, Youth and Families (DCYF). Law enforcement investigated the report to DCYF which involved, in part, the victim attending interviews at the Child Advocacy Center (CAC). During these interviews, the victim made a number of disclosures regarding the defendant's conduct when he showered with her. As a result, in November 2020, a Hillsborough County grand jury indicted the defendant on two counts of indecent exposure and lewdness and one count of FSA.

Generally, the charges alleged that the defendant exposed his genitals to the victim, who was three years old at the time, and that he knowingly engaged in sexual contact with her.

Prior to trial, the parties requested that the trial court conduct an in camera review of the victim's confidential records, including DCYF records, the victim's educational records, as well as family records pertaining to the litigation between the victim's mother and her biological father. The trial court asked the parties for guidance as to what information should be subject to disclosure and, in response, defense counsel informed the court that the victim's parents had engaged in acrimonious litigation that had "snowballed" and any information suggesting bias on the part of the victim's biological father could be exculpatory given that the defendant had married the victim's mother. Following the court's in camera review, it disclosed DCYF and certain family court records but it did not find any relevant or material information in the victim's school records.

One day prior to trial, the State provided the defendant with a memorandum disclosing new information recently obtained from trial witnesses during pre-trial preparation. Defense counsel responded by filing a "Motion to Exclude Additional Evidence or to Continue the Trial." The motion alleged that the disclosure constituted "trial by ambush" and that the "material contained in the memo is highly sexually graphic and very prejudicial to the Defendant and would inflame the jury." The motion further explained that defense counsel "cannot adequately prepare to defend against such allegations in this very short period of time" and "[i]t would change the entire defense strategy" and "require the defense to hire expert witnesses to review these new allegations." Defense counsel did not attach the memo to her pleading.

The following day, the trial court addressed the defendant's motion to continue by pointing out that "[fourteen] jurors who came from all over the state" were waiting for the trial to begin, yet the defense was "asking either to exclude substantial evidence or continue [the] trial." Defense counsel informed the court that her husband had been sick all night, that she injured her back helping him and that she was "in bad shape, to put it mildly." The State provided the court with the memo and explained that it was not seeking to admit the "majority of [the] information" disclosed in the memo. Rather, some of the information concerning "the [victim's] sexualized behavior and that type of conduct" was previously disclosed in DCYF records and the memo provided more detail from recent interviews of certain witnesses.

The State specified that it was seeking to introduce testimony that witnesses had observed the victim engage in sexualized behavior, such as the victim "humping a teddy bear," stacking "Barbie dolls on top of each other," sleepwalking, and kissing a young girl's buttocks, and the victim's "fascination

2

with her crotch" when bathing. The State also noted that only the observations of sleepwalking and the victim kissing another child's buttocks had not been previously disclosed.

The defendant objected, arguing that the new information "presents a new layer of detail" that changes the defense's trial strategy because the information suggested that the victim's behavior was caused by the defendant's alleged conduct. Defense counsel also suggested that she would like to have an expert review the information. The State responded that the information concerning the victim's sexualized behavior was related to the timing of the victim's disclosures, because her personality changed and she began exhibiting these behaviors after she began disclosing the defendant's conduct.

Ultimately, the court found that continuing the trial was inappropriate and denied the defendant's motion. With respect to the admissibility of the victim's sexualized behavior, the trial court reasoned that it would depend upon what foundation the State provided during the trial and, accordingly, the court would rule "as the issues are presented." The court reminded defense counsel that she would have to "object at the appropriate juncture at trial."

After a three-day trial, the jury convicted the defendant on all counts. This appeal followed.

We first address the defendant's argument that the trial court erred in denying his motion to continue the trial. More specifically, the defendant maintains that a continuance was necessary because: (1) defense counsel represented that she was physically impaired and exhausted due to her husband's significant illness; and (2) the memo "functioned as a last-minute notice that the [State] was pursuing a new strategy" based upon new and inflammatory information that required the defendant to reconfigure his trial strategy. The State counters that the trial court acted within its discretion when it denied the motion because the prosecution represented that it did not intend to introduce the majority of the information disclosed by the memo and most of the information related to observations of behaviors that had already been disclosed. It also argues that, because most of this information had been previously disclosed, defense counsel was on notice that the State might introduce this information and should have contemplated retaining an expert to address the significance of the victim's behavior well before trial. We agree with the State.

This court will not overturn a trial court's ruling on a motion to continue absent an unsustainable exercise of discretion. State v. Czekalski, 169 N.H. 732, 740 (2017). Of course, this standard of review does not mean that a trial court's denial of a continuance will be treated superficially by this court. State v. Linsky, 117 N.H. 866, 879-80 (1977). We do not apply a mechanical test to

determine whether a defendant's due process rights have been violated by a denial of a continuance.  Id.  Rather, in each case we consider the totality of the circumstances.  State v. Addison, 160 N.H. 792, 795 (2010).

Here, more than two and one-half years after the defendant had been indicted, the defendant sought a continuance or the exclusion of evidence just one day before the trial was scheduled to commence.  Although the timing of the disclosure is troubling, we agree with the State that the information disclosed in the memo was not necessarily "new" and, as the prosecution indicated prior to the trial, it was not seeking the admission of the majority of the information disclosed one day earlier.  Rather, evidence concerning the victim's behavior had been previously disclosed when the trial court provided the parties with the DCYF records six months earlier.  Although certain, specific behavior by the victim was not disclosed until the State provided the memo, similar behavior had been disclosed through the production of the DCYF records.  Consequently, the memo was not "a last-minute notice that the [State] was pursuing a new strategy."

Moreover, the trial court's decision to defer ruling on the admissibility of the victim's sexualized behavior until it determined whether the State could provide a sufficient foundation during trial provided the defendant with the opportunity to prepare a challenge to its admissibility.  Although defense counsel expressed physical and family-health problems, the trial court was in the best position to assess whether a continuance was necessary.  See Linsky, 117 N.H. at 879.  When these circumstances are considered in their totality, the trial court's denial of the motion to continue did not unreasonably or untenably prejudice the defendant's case and we conclude that the trial court sustainably exercised its discretion in denying the motion.  See Addison, 160 N.H. at 795.

Next, we address the defendant's argument that his trial counsel's representation was constitutionally deficient and deprived him of his right to effective assistance of counsel.  Part I, article 15 of the New Hampshire Constitution and the Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant reasonably effective assistance of counsel.  N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV.  As noted in his brief, the defendant has not availed himself of the opportunity to seek a new trial on this basis in the superior court.  Instead, the defendant maintains that trial counsel's alleged errors fall within a limited exception to the rule that IAC claims cannot be pursued on direct appeal.  See State v. Thompson, 161 N.H. 507, 526-27 (2011).  More specifically, the defendant contends that trial counsel failed to object to irrelevant and hearsay testimony that prejudiced him and that she failed to object when witnesses testified about the victim's sexualized behavior without the State providing a sufficient foundation for the admission of this evidence.  According to the defendant, his IAC claims can be

resolved on direct review by this court because these omissions fall "well outside the range of reasonable professional judgment."

In contrast, the State maintains that the defendant's claims fall within the "hybrid" of IAC claims that challenge an act or omission on the record that may be within the range of acceptable tactical choices counsel might have made, but in this particular instance is claimed to be made due to unacceptable ignorance of the law or some other egregious failure rising to the level of deficient representation. Id. at 526-27 (quotation omitted). As the State points out, in such cases "the reasoning of trial counsel may be apparent from the trial record, [but] it is usually necessary to develop an additional record to show the reason for the act or omission that appears in the trial record." Id. at 527. We agree with the State.

We conclude that the cold record before us is insufficient to fully evaluate the merits of the defendant's IAC claims. To prevail on an IAC claim, the defendant must overcome the presumption that trial counsel reasonably adopted her trial strategy. State v. Fitzgerald, 173 N.H. 564, 573 (2020). When adjudicating IAC claims, we afford a high degree of deference to the strategic decisions of trial counsel, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make. Id. Our review of the record reveals that trial counsel frequently and actively raised objections throughout the trial. There may be multiple, plausible and reasonable reasons why a criminal defense attorney might decide not to lodge an objection to evidence; such decisions may be tactical, or they might be based upon a reasonable conclusion that the evidence is admissible. On this record, we cannot conclude whether the defendant's IAC claims have or lack merit. Accordingly, we dismiss the defendant's IAC claims without prejudice to his pursuit of them in the superior court.

Lastly, we address the defendant's request for in camera review by this court of certain confidential educational records pertaining to the victim. In his brief, the defendant noted that the only issue on appeal is whether the trial court should have released the contents of the victim's school records. We have reviewed the records at issue and conclude that they do not contain any information that is relevant or material to the defendant's case. Consequently,

the trial court sustainably exercised its discretion by not disclosing these records to the parties.  See State v. Girard, 173 N.H. 619, 628 (2020).

Convictions affirmed;
ineffective assistance of
counsel claims dismissed
without prejudice.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**